**PLAYBOY ENTERPRISES, INC., a corporation, Plaintiff-Appellant,**

v.

**BACCARAT CLOTHING CO., INC., a corporation, Meier Caspi and Tchia Caspi, individuals, Defendants-Appellees.**

No. 82–5010.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1982.

Decided Nov. 22, 1982.

William F. Dudine, Jr., Darby & Darby, P.C., New York City, for plaintiff-appellant.

Michael M. Hatchwell, Hatchwell & Johnson, Los Angeles, Cal., Lewis Anten, Encino, Cal., for defendants-appellees.

Appeal from the United States District Court for the Central District of California.

Before ELY, SNEED and ALARCON, Circuit Judges.

ELY, Circuit Judge:

This is a trademark infringement case concerning the appropriateness of the District Court's damages award. The appeal arises from a civil action initiated by Playboy Enterprises, Inc. ("PEI") in the United States District Court for the Central District of California against Baccarat Clothing, Inc. ("Baccarat") and Meier Caspi and his wife Tchia Caspi ("the Caspis") for infringement of PEI's federally registered PLAYBOY and RABBIT HEAD design trademarks (15 U.S.C. § 1051, et seq.). The District Court found for PEI but granted damages of only $12,750. PEI appeals the sufficiency of this award on several grounds.

## I. FACTUAL BACKGROUND

Baccarat and the Caspis operate a wholesale and retail jeans business in South Los Angeles and retail jeans businesses from other locations in suburban Los Angeles. Artistic Identification Systems, Inc. ("AIS") is in the business of manufacturing and selling various types of labels, including woven and embroidered labels, for use on wearing apparel. From 1979 through February 1981, when the District Court action was commenced, AIS delivered to Baccarat and the Caspis approximately 43,000 labels bearing the combination PLAYBOY and RABBIT HEAD design mark. A substantial, but necessarily imprecise, number of the labels were used on jeans which were made and sold by the defendants. Neither Baccarat nor the Caspis entered into a licensing agreement with PEI prior to the above actions. On February 6, 1981, PEI filed suit in District Court for trademark infringement and false designation of origin under the Lanham Act (15 U.S.C. § 1117).

On February 9th, Baccarat and the Caspis appeared through counsel and consented to the entry of a preliminary injunction and to the seizure of any counterfeit PLAYBOY goods which PEI might find at any of the Baccarat store locations. On February

10th, PEI attempted to depose the defendants. During the deposition the defendants continually invoked their Fifth Amendment privilege against self-incrimination and refused to provide any information with respect to their manufacture and sale of counterfeit PLAYBOY jeans. They also refused to produce the counterfeit PLAYBOY labels then in their possession. PEI, through third party discovery, determined that Baccarat and the Caspis purchased the counterfeit PLAYBOY and RABBIT HEAD labels from AIS.

In view of their failure to provide proper discovery with respect to the counterfeit PLAYBOY jeans, the District Court prohibited the defendants from testifying or introducing any evidence with respect to matters about which they had failed to provide discovery. Thus, the defendants were precluded from introducing evidence as to the number of infringing jeans sold.

After a one-day trial on October 27, 1981, the District Court announced its decision from the bench. The District Court found that PEI's PLAYBOY and RABBIT HEAD design trademarks are strong and distinctive and have acquired great fame, Baccarat and the Caspis by their unauthorized manufacture and sale of jeans bearing PEI's trademarks willfully and deliberately counterfeited these marks, Baccarat and the Caspis through such counterfeiting confused and deceived the public into believing that the counterfeit jeans originated with PEI, Baccarat and the Caspis ordered 43,000 counterfeit PLAYBOY and RABBIT HEAD labels from AIS and sold 20,000 pairs of jeans bearing such labels, and neither Baccarat nor the Caspis entered into a licensing agreement with PEI prior to taking these actions.

Upon these findings the District Court awarded PEI $12,750 in damages based on the revenue which PEI would have received had the infringing sales been licensed at the standard PEI royalty rate of five percent. The District Court refused to award PEI both its attorneys' fees and the profits earned by the defendants from the sale of the counterfeit jeans. In addition, the court refused to increase the damage award pursuant to 15 U.S.C. § 1117 (permitting treble damages). PEI appeals the above decisions.

## II. ANALYSIS

First, PEI's assertion that the District Court erred in failing to award an accounting of profits remedy will be explored. In *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir.1968), we held that where trademark infringement is deliberate and willful both the trademark owner and the buying public are slighted if a court provides no greater remedy than an injunction. *Maier* stressed that the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party. In pursuit of this goal *Maier* reasoned that an accounting of profits would serve as a proper remedy both in those cases involving direct competition between the trademark infringer and the trademark owner and also in those instances where no direct competition exists. *Maier* justified the accounting of profits remedy in direct competition cases as necessary to secure the return of all profits to the deserving trademark owner and justified the accounting of profits remedy in non-direct competition cases (the case on appeal) as necessary to prevent the unjust enrichment of the infringing party. *See also Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582 (5th Cir.1980) and *Monsanto Chemical Co. v. Perfect Fit Products Manufacturing Co.*, 349 F.2d 389 (2d Cir.1965).

In expanding upon the policy considerations underlying the *Maier* decision it logically follows that an award of little more than nominal damages would encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication. Such a method of enforcement would fail to serve as a convincing deterrent to the profit maximizing entrepreneur who engages in trademark piracy. The judicial penalties imposed under such an approach would be simply factored into the

infringer's profit and loss statement. If after deducting this "judicial expense" the entrepreneur still earns a suitable return on his investment he will continue the infringing activities. Under these circumstances the best advice to a counterfeiter would be to plead the Fifth Amendment, provide no documents and if the trademark owner is able to obtain evidence of the counterfeiting activities through third party discovery, simply pay as a "judicial expense" no more than a reasonable royalty on the goods sold. Through the employment of such ineffective remedies the counterfeiter escapes without suffering the economic harm necessary to serve as a deterrent to future infringing activities.

■ In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner. As a result of this trademark infringement the consuming public is denied the benefit of their bargains and the reputation and goodwill of the trademark owner is accordingly harmed. For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.

With these policy considerations serving as a background and in light of the abuse of discretion standard, it is next appropriate to analyze the adequacy of the damages awarded to PEI by the trial court. In *Faberge, Inc. v. Saxony Products, Inc.,* 605 F.2d 426 (9th Cir.1979) this court stated that any decision concerning the awarding of an accounting of profits remedy should remain within the discretion of the trial court. The Ninth Circuit's standard for reviewing such an exercise of discretion was clearly stated in *Chism v. National Heritage Life Insurance Co.,* 637 F.2d 1328 (9th Cir.1981). The *Chism* court held that a trial court's exercise of discretion will not

be disturbed unless there is a "definite and firm conviction that the court below committed a clear error of judgement in the conclusion it reached upon a weighing of the relevant factors." *Id.* at 1331.

■ Thus, unless we are left with a definite and firm conviction that a clear error of judgment occurred, the trial court's denial of an award of profits must be upheld. In the instant case the trial court found that PEI was damaged through the defendants' sale of 20,000 pairs of jeans bearing counterfeit PLAYBOY and RABBIT HEAD insignias. PEI established at trial that the defendants made a profit of at least six dollars per sale. The appropriate computation yields a profits award of $120,000 in contrast to the trial court's $12,750 remedy. After a quick comparison it becomes quite clear that the District Court awarded PEI approximately one-tenth of the benefits which accrued to the defendants through their trademark infringement.

The practical reality of this decision may be summarized in one question: Would a profit seeking businessperson, not unwilling to violating federal law, pay ten cents to make one dollar? If the answer is "yes" then the trial court's decision did not follow this court's clear mandate in *Maier* to make willful trademark infringement unprofitable. Since the activities of Baccarat and the Caspis yielded great financial reward, we believe the District Court abused its discretion in not granting PEI an accounting of the profits earned by the defendants. Any other remedy results in the defendants being unjustly enriched.

■ Although we believe that PEI merits an accounting of profits award, we disagree with the plaintiff's contention that the trial court was clearly erroneous in finding the defendants liable for the sale of only 20,000 pairs of infringing jeans. PEI argues that the defendants should be held liable for profit damages on all 43,000 PLAYBOY and RABBIT HEAD labels which were purchased by and delivered to the defendants. We believe that there is sufficient evidence in the record to support the District Court's determination. Fur-

thermore, while we readily acknowledge that the defendants were guilty of willful trademark infringement, abuse of the discovery process and generally evasive and noncooperative behavior, we do not believe that it would be appropriate to award PEI an equity based accounting of profits premised on potentially fictitious sales from which the defendants derived no economic gain.

■ In addition PEI argues that the District Court abused its discretion by refusing to increase the plaintiff's damages award pursuant to 15 U.S.C. § 1117. Section 35 of the Lanham Act gives the trial judge discretion to increase the award of actual damages, not to exceed three times that amount, according to the circumstances of the case. We reject PEI's invitation to engage in appellate factfinding and therefore defer to the trial court's decision which is supported by sufficient evidence.

Lastly, PEI's claim that the District Court erred in failing to make an award of reasonable attorneys' fees will be discussed. In 1975, Congress amended the Lanham Act for the express purpose of permitting the recovery of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117. Prior to enactment of the amendment, courts could not award attorneys' fees in trademark or unfair competition cases. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). In Senate Report No. 93–1400, 93rd Congress, Second Session (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 7132, the Committee on the Judiciary stated that the remedy of attorneys' fees "should be available in exceptional cases, *i.e.,* in infringement cases where the acts of infringement can be characterized as 'malicious', 'fraudulent', 'deliberate', or 'willful'." *Id.* at 7133.

Since enactment of the amendment, numerous courts have awarded attorneys' fees to trademark owners who prosecuted actions against willful and deliberate infringers and counterfeiters. In *Quaker State Oil Refining Corp. v. Kooltone, Inc.,* 649 F.2d 94 (2d Cir.1981), the Second Circuit upheld an award of attorneys' fees in a trademark case on the ground that the case was truly exceptional under the Lanham Act. In affirming, the court rejected the argument that although the infringement was deliberate and willful, such a finding was per se insufficient to warrant an award of attorneys' fees. The court also noted that a showing of bad faith can render cases "exceptional" justifying an award of attorneys' fees. *See also Holiday Inns, Inc. v. Airport Holiday Corporation,* 493 F.Supp. 1025 (N.D.Tex.1980).

■ PEI, relying on the above cited cases, argues that the instant case is "exceptional" because the defendants' illegal conduct was both flagrant and willful. PEI also claims that the counterfeiting activities were compounded by the defendants' refusal to provide any discovery whatsoever and by the defendants' repeated Fifth Amendment pleas.

In light of PEI's well supported arguments and the trial court's finding that the defendants deliberately arranged to obtain counterfeit goods and to sell such goods as genuine PEI products, it is our opinion that the lower court abused its discretion by not considering such actions "exceptional." This is not a case where an infringer developed what he imagined to be a proper trademark only to find out later that his trademark caused confusion as to its source, and therefore infringed a product with a registered trademark. Quite to the contrary, Baccarat and the Caspis are not innocent infringers. They premeditatedly sought the services of AIS to produce counterfeit PLAYBOY and RABBIT HEAD insignias and upon receiving such goods sold them as legitimate PEI products. Since the defendants' actions cannot be justified as either a reasonable attempt to develop their own trademark or as the result of innocent confusion concerning the existence of the well recognized PEI trademarks, we cannot escape the conclusion that the 1975 amendment to the Lanham Act was specifically directed towards eliminating such blatant activity.

We, accordingly, reverse the trial court's determination that this is not an "excep-

tional" case and instruct the trial court to award plaintiff its reasonable attorneys' fees. In making this determination the lower court should consider the magnitude of the case, the time expended by the attorneys based on a reasonable hourly compensation, the result accomplished and any other factors which may perhaps bear upon the issue.

In conclusion, upon remand, the District Court shall award PEI an accounting of profits based on the wrongful sale of 20,000 pairs of jeans bearing fraudulent PLAYBOY and RABBIT HEAD insignias, *i.e.,* one hundred twenty thousand dollars ($120,000.00). We deny PEI's request that the profits award be increased pursuant to 15 U.S.C. § 1117. Lastly, PEI shall be allowed such attorneys' fees as, after affidavits and hearings, if necessary, shall be determined to be reasonable under the guidelines of this opinion.

REVERSED IN PART; REMANDED IN PART.