**POLO FASHIONS, INC.,**
**Plaintiff-Appellant,**

v.

**DICK BRUHN, INC.; the Woolen Mill;**
**Richard L. Bruhn; and Larry**
**Pickens, Defendants-Appellees.**

**No. 85–2280.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 1986.

Decided July 10, 1986.

Milton Springut, Morton Amster, Amster, Rothstein & Engelberg, New York City, Neil A. Smith, Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff-appellant.

David St. Louis, Sandell, Young & St. Louis, Fresno, Cal., for defendants-appellees.

J. Joseph Bainton, Reboul, MacMurray, Hewit, Maynard & Kristol, New York City, amicus curiae, for International Anticounterfeiting Coalition, Inc.

Before CHAMBERS, SNEED, and FARRIS, Circuit Judges.

SNEED, Circuit Judge:

This is a trademark infringement action. The plaintiff, Polo Fashions, Inc. (Polo), prevailed in the district court and received approximately $6,000, the amount of profits the defendants earned from sales of counterfeit Polo shirts. Polo argues that the district court did not award an adequate remedy. We agree in part. Therefore, we affirm in part, reverse in part, and remand.

## I.

### FACTS

Polo manufactures a popular line of quality menswear. It goes to great efforts to ensure that its products are of excellent quality and are sold only in suitable establishments. In January 1982, Larry Pickens, one of the defendants, began purchasing Polo shirts under unusual circumstances from Ladowitz & Sergio, a firm not party to this appeal. Pickens sold these shirts to Dick Bruhn, Inc. (Bruhn), a California retail clothing chain, the other defendant in the case. Bruhn sold a number of shirts to customers at a profit. The district court found, and the parties do not dispute, that the questionable nature of the supply arrangements, and the low quality of the shirts, put Pickens and Bruhn on notice that the shirts were not manufactured by Polo.

Polo soon learned that Bruhn was selling counterfeit shirts. On March 9, 1982, Polo sent an express mail letter demanding that Bruhn cease selling the shirts. After consultation with his attorney, Bruhn decided to continue selling the shirts. On March 16, Polo filed suit. Bruhn continued selling the shirts to retail customers and also, on March 22, shipped a number of the shirts at cost to another retailer. Bruhn's representations to Polo during this period nonetheless led Polo to believe that Bruhn had ceased selling and shipping the shirts. In fact, Bruhn did not cease disposing of the shirts until March 26, ten days after suit was filed.

The district court found for Polo. It characterized the defendants' actions as "callous disregard for the rights of the mark holder and a willful infringement." The parties do not contest the district court's finding of liability. The district court, however, refused to award any remedy other than a recovery of Pickens's and Bruhn's profits.

On appeal, Polo seeks three additional remedies: (1) attorneys' fees under 15 U.S.C. § 1117; (2) the receipts on the sales of shirts at cost to other retailers; and (3) a permanent injunction.

## II.

### DISCUSSION

A. *Attorneys' Fees*

The district court's refusal to award attorneys' fees under Lanham Act § 35, 15 U.S.C. § 1117 (section 1117), is reviewed for an abuse of discretion. *See Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir. 1982).

Section 1117 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Congress added this sentence in 1975, Act of Jan. 2, 1975, Pub.L. No. 93–600, § 3, 88 Stat.1955, 1955, to overrule the Supreme

Court decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (prohibiting the award of attorneys' fees in trademark cases absent express statutory authority). The Senate Report described the breadth of the remedy as follows:

> Effective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights. It would be unconscionable not to provide a complete remedy including attorney fees for acts which courts have characterized as malicious, fraudulent, deliberate, and willful. The proposed amendment would limit attorney fees to "exceptional cases" and the award of attorney fees would be within the discretion of the court.

S.Rep. No. 1400, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 7132, 7136.

The text of section 1117 places a heavy burden on an attorney arguing that the district court abused its discretion in refusing to award attorneys' fees. First, the remedy is available only in "exceptional cases." Second, the statute provides that the court "may" award fees; it does not require them. Finally, the Senate Report expressly commends this decision to the discretion of the court.

Polo's argument that the district court abused its discretion rests squarely on *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir.1982). There we reversed a district court's refusal to award attorneys' fees under section 1117. *See id.* at 1276–77. We noted that the defendants premeditatedly manufactured counterfeit insignias and sold them for several years at a substantial profit. The defendants' conduct in this case is less blameworthy. Although Pickens and Bruhn must have known that the shirts were not genuine Polos, they did not invest the effort and time to manufacture them; they simply took advantage of a profitable business opportunity presented to them.

Moreover, the defendants in *Playboy* obstructed discovery during the lawsuit to prevent the plaintiffs from locating the counterfeit goods. The district judge in this case was clearly aware that he had the power to award fees; he just as clearly exercised his discretion not to award them. On the facts of this case, we decline to interfere in his performance of the function Congress assigned to him when it enacted section 1117.[1]

## B. *Award of Profits on the Sale of Shirts at Cost*

 The adequacy of the damages awarded by the trial court under section 1117 is also reviewed under the abuse of discretion standard. *See Playboy*, 692 F.2d at 1275.

Section 1117 provides that a successful plaintiff in a trademark infringement action is

> entitled ... to recover ... defendant's profits .... In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.... If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

After Bruhn realized that the shirts it had purchased from Pickens were not genuine Polo shirts, it sold some of the shirts to other retailers at cost. The district

---

1. We acknowledge that, since the institution of this action, the Lanham Act has been amended to provide for criminal penalties for trafficking in counterfeit goods. The statute also provides for attorneys' fees awards as the norm in cases of this sort. *See* Trademark Counterfeiting Act of 1984, Pub.L. No. 98–473, § 1502, 98 Stat. 1837, 2178 (providing for criminal penalties) (to be codified at 18 U.S.C. § 2320); *id.* § 1503(2), 98 Stat. 1837, 2182 (amending section 1117). The parties do not contend that these provisions apply to this case; obviously these amendments to the Lanham Act are not probative of the intent Congress had when it drafted section 1117 in 1975.

court refused to award Polo damages for the sale of these shirts, because Bruhn did not make a profit on the sale. Polo argues that the district court should have awarded the entire receipts from the sales as "profits." If Bruhn had not disposed of these shirts, Polo argues, they would have been confiscated by Polo, and Bruhn would have received no money for the shirts, losing its entire investment. Accordingly, the receipts on these shipments should be characterized as "profits."

While we reject the "profits" characterization of these receipts, we do agree that the court did not impose an adequate remedy for the "at cost" sales. As we noted in *Playboy*, the purpose of section 1117 is to "take all the economic incentive out of trademark infringement." 692 F.2d at 1275. Remedies that do not remove the economic incentive "would encourage a counterfeiter to merely switch from one infringing scheme to another as soon as the infringed owner became aware of the fabrication." *Id.* at 1274.

The district court's remedy in this case did not remove all of Bruhn's economic incentive to buy and sell counterfeit Polo shirts. Bruhn was charged exactly the same penalty it would have been charged if it had behaved legally, that is, if it had destroyed the counterfeits. *See* Lanham Act § 36, 15 U.S.C. § 1118. Despite Bruhn's having acted unlawfully in selling the counterfeits, the district court's remedy left Bruhn $8,820 richer than it would have been had it acted lawfully. The mythic future infringer, well-versed in the precedents of this circuit and not unwilling to violate federal law, would ship the shirts just as Bruhn did. To remove this incentive, we hold that the recovery based on profits is inadequate. Bruhn must pay Polo the receipts from the sales of those shirts, $8,820; any lesser remedy would not remove the incentive for Bruhn to ship the shirts after discovering that they were counterfeit.

## C. Permanent Injunction

▪ A district court's denial of an injunction is reviewed for an abuse of discretion. *SEC v. Arthur Young & Co.*, 590 F.2d 785, 787 (9th Cir.1979). The legal standards it applied, however, are subject to de novo review. *E.g., United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The district court's judgment on this point stated that "[t]he facts and circumstances of this case also do not indicate that permanent injunctive relief is necessary. Polo has provided no evidence suggesting that defendants intend to, or are likely to, engage in future sales or distribution of counterfeit Polo merchandise."

The district court erred. As the Supreme Court has noted in this area, a trademark plaintiff

> entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted.

*William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532, 44 S.Ct. 615, 618, 68 L.Ed. 1161 (1924); *see Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947). In this case, the district court refused to grant an injunction because the plaintiffs had not introduced any specific evidence to demonstrate that the defendants would infringe in the future. The court was correct in noting that cessation of the unlawful conduct can moot such a dispute, but it failed to recognize that "the reform of the defendant must be irrefutably demonstrated and total." 2 J. McCarthy, *Trademarks and Unfair Competition* § 30:6, at 471 (2d ed. 1984). The defendants had willfully violated Polo's trademark rights. The defendants refused to stop violating those rights until Polo brought suit in federal district court. We should not require Polo also to introduce concrete evidence that the defendants are likely to infringe again. If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives Polo substantial protection

of its trademark. Accordingly, we reverse the district court's refusal to grant permanent injunctive relief. We remand this case to the district court to provide the relief that Parts II. B. and C. of this opinion require.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.