**LEVI STRAUSS & COMPANY,**
Plaintiff–Appellee,

v.

Avner SHILON, a/k/a Avi Shilon, d/b/a A. Shilon & Co., Defendant–Appellant.

**LEVI STRAUSS & COMPANY,**
Plaintiff–Appellee,

v.

Avner SHILON, a/k/a Avi Shilon, d/b/a A. Shilon & Co., Defendant–Appellant.

and

**A. Shilon & Co., Defendant.**

Nos. 96–55256, 96–55367.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 2, 1997.

Decided Aug. 5, 1997.

Timothy R. Cahn, Legal Strategies Group, Emeryville, CA, for plaintiff-appellee.

Harry S. Berman, Los Angeles, CA, for defendant-appellant.

Before: BROWNING, FLETCHER and KOZINSKI, Circuit Judges.

FLETCHER, Circuit Judge:

After conducting a private undercover investigation, Levi Strauss and Company brought this action against Avner Shilon for: (1) offering to sell and producing counterfeit goods under section 32 of the Lanham Act, 15 U.S.C. § 1114; (2) unfair competition under section 43 of the Lanham Act, 15 U.S.C. § 1125; and (3) unfair competition and trademark dilution under California law. Cal. Bus. & Prof.Code §§ 14320, 14330 & 17200.

The district court granted partial summary judgment to Levi Strauss on the question of whether Shilon *offered* to sell counterfeit labels and jeans. After a bench trial, the district court rejected Shilon's affirmative defenses, enjoined Shilon from further dealings in Levi Strauss products, and awarded Levi Strauss a portion of its attorney's fees and investigation costs.[1] Shilon timely appeals each of these rulings. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

During an undercover investigation initiated by Levi Strauss & Company, Avner Shilon, a Los Angeles clothing manufacturer, offered to sell 10,000 sets of counterfeit Levi Strauss labels and tags and 10,000 pairs of "blank" counterfeit Levi's jeans[2] to Carlos Fernandez, a private investigator hired by Levi Strauss posing as a clothing distributor from Mexico. Because he was not authorized by Levi Strauss to purchase counterfeit goods, Fernandez never paid for, and Shilon never provided, the counterfeit jeans and tags. However, Shilon did provide Fernandez with a sample set of counterfeit Levi's tags and labels and with a single pair of "blank" jeans with Levi Strauss trademark arcuate stitch pattern on the back pockets.

Fernandez tried unsuccessfully to convince the police and customs officials to conduct a raid on Shilon's business to seize the labels. Thus, without having the actual counterfeit goods in hand, Levi Strauss filed this lawsuit against Shilon for offering to sell and producing 10,000 sets of counterfeit Levi Strauss jeans and components.

## DISCUSSION

A. *Liability Under the Lanham Act*

1. An Offer to Sell Counterfeit Goods

■ Shilon appeals the district court's grant of summary judgment on the issue of liability for offering to sell counterfeit goods where no goods were actually sold or produced. Shilon argues that the Lanham Act does not create liability for a "naked offer" to sell goods.[3] Shilon does not dispute the district court's finding of fact that he offered to sell counterfeit goods to Fernandez. He claims instead that as a matter of law a

---

1. The court held that there was insufficient evidence to show that Shilon actually produced counterfeit jeans and components. Levi Strauss did not appeal this adverse ruling.

2. "Blank" jeans are those without the various tags, labels, and rivets placed on a completed pair of jeans. The plan was for Shilon to produce the 10,000 sets of "blank" jeans and Fernandez to export the jeans and labels separately to Mexico where they would be assembled and distributed. This scheme is evidently a common technique designed to foil U.S. trademark enforcement efforts.

3. Shilon points out that there are no published appellate decisions finding liability for an offer to sell where there were no actual goods. The fact that there have been few or no cases finding liability for a "naked offer" under the Lanham Act sheds little light on the legal question of whether the Act allows for liability under such circumstances. After all, there are similarly no published decisions finding that one *cannot* be held liable for a "naked offer." The fact that there are no published opinions on point is more likely a reflection of the limited remedies formerly available under the Lanham Act to plaintiffs where no counterfeit goods were actually sold. At the time this case was filed, a plaintiff could only recover damages and the defendant's profits, in addition to fees and costs. 15 U.S.C. § 1117(a) & (b) (1995). Thus, in cases where there was only an offer to sell, plaintiffs' recovery was minimal. Here, for example, Levi Strauss' actual recovery was only $26,162.41.

In 1996, however, Congress amended § 1117, Pub.L. 104–153, § 7, adding subsection (c) which allows plaintiffs to elect statutory damages. 15 U.S.C. § 1117(c) (Supp.1997). This change applies only prospectively however and thus statutory damages are not available to Levi Strauss in this case.

"naked offer to provide labels" cannot create liability under the Lanham Act.

■ A grant of summary judgment is reviewed de novo. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Id.* We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

Section 32 of the Lanham Act created a civil cause of action for trademark infringement and counterfeiting. Despite clear language to the contrary, Shilon argues that without the actual sale or production of counterfeit goods he cannot be held liable to Levi Strauss simply for making an offer to sell such goods. Section 32 provides that:

(1) Any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, *offering for sale,* distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, *offering for sale,* distribution, or advertising of goods or services or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive shall be liable in a civil action by the registrant....

15 U.S.C. § 1114 (1995) (emphasis added). The statute does not require that the defendant be in possession of counterfeit goods at the time of the offer or that the defendant make an actual sale. An offer to sell without more will suffice to establish liability.

Shilon argues that without the actual counterfeit goods Levi Strauss cannot establish that the use of such goods was likely to "cause confusion, or to cause mistake or to deceive." *Id.* This argument is unavailing. Shilon did not offer to sell hypothetical Levi's tags, labels, and jeans which may or may not have been close enough to the real product to cause consumer confusion. His offer was to sell 10,000 sets of tags, labels, and jeans exactly like the samples that he had provided to the Levi Strauss investigators. Shilon admitted to providing these samples and he does not claim that these samples, if sold, would not cause consumer confusion or were not likely to deceive or cause mistake. Certainly the counterfeit Levi's tags, labels, and jeans were intended to "cause confusion, or to cause mistake or to deceive." Accordingly, Shilon can be liable under section 32 for an offer to sell counterfeit goods despite the district court's conclusion that there was insufficient evidence to prove that he actually sold or produced the goods.

2. An Offer to Sell Counterfeit Goods is Not Protected by the First Amendment

■ Shilon argues that, because Levi's claim is based upon a "naked offer," the First Amendment prevents the court from finding him liable under the Lanham Act. The district court's conclusions on constitutional questions are reviewed de novo. *Jacobsen v. United States Postal Serv.,* 993 F.2d 649, 653 (9th Cir.1992) (First Amendment).

■ Shilon's contention that his offer to sell counterfeit Levi's components is protected by the First Amendment is specious. For commercial speech to come within the protection of the First Amendment, it must concern lawful activity. *Nordyke v. Santa Clara County,* 110 F.3d, 707, 710 (9th Cir.1997).

[T]he First Amendment does not protect all proposals to engage in commercial transactions. An offer to pay a "hit man" one million dollars to murder my neighbor proposes a commercial transaction. Simi-

larly, an offer to pay a government official to provide unauthorized copies of classified documents also proposes a commercial transaction. But these proposals to engage in commercial transactions are not accorded First Amendment protection because the underlying transaction is illegal. *Id.* Because the transaction underlying Shilon's offer, i.e. selling counterfeit goods, is unlawful, the offer itself is not afforded First Amendment protection.

3. "Unclean Hands" as an Affirmative Defense in Cause of Action Under the Lanham Act Action

■ Shilon argues that, because the investigators committed misconduct during the investigation, Levi Strauss has "unclean hands" and should have been equitably estopped from obtaining relief under the Lanham Act. Shilon claims that he was "entrapped" by Fernandez who conducted an unlawful "sting" operation. The district court denied Shilon equitable relief.

■ A district court's decision to deny equitable relief is reviewed for an abuse of discretion. *See Diaz v. San Jose Unified Sch. Dist.,* 861 F.2d 591, 595 (9th Cir.1988). A district court abuses its discretion if it fails to apply the correct law or if it rests its decision on a clearly erroneous finding of material fact. *Marchand v. Mercy Medical Ctr.,* 22 F.3d 933, 936 (9th Cir.1994).

■ "Unclean hands is a defense to a Lanham Act infringement suit. To prevail ... [e]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue." Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,* 826 F.2d 837, 847 (9th Cir.1987) (internal citations and quotations omitted). For example, a court should not protect a trademark which itself is misleading. *Worden & Co. v. California Fig Syrup Co.,* 187 U.S. 516, 533–34, 23 S.Ct. 161, 165–66, 47 L.Ed. 282 (1903) (laxative named "Syrup of Figs" unprotectable where product contains no figs or fig juice). In its claim for equitable relief, "the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." *Fuddruckers,* 826 F.2d at 847.

The district court heard three days of trial testimony primarily concerning what transpired during the investigation. Shilon and Fernandez each testified and was subjected to cross-examination by opposing counsel. During closing arguments, Shilon's counsel urged the court to grant Shilon equitable relief because he had been "entrapped" by Levi Strauss' investigator. At the close of trial the district court expressed some concern about Fernandez's investigation tactics; however, the court ultimately rejected Shilon's claim for equitable estoppel.

The district court's decision to deny Shilon equitable relief is supported by ample evidence in the record. Assuming *arguendo* that "entrapment" may be an affirmative defense in a civil action under the Lanham Act, and assuming, also for purposes of analysis only, that Fernandez induced Shilon into offering to sell counterfeit Levi's jeans, there was sufficient evidence presented at trial from which the district court could conclude that Shilon was predisposed to sell or produce counterfeit clothing.

Five factors may be considered to show predisposition: (1) the defendant's character and reputation; (2) whether the [investigator] initially suggested the criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the ... inducement. *United States v. McClelland,* 72 F.3d 717, 722 (9th Cir.1995), *cert.* denied, —— U.S. ——, 116 S.Ct. 1448, 134 L.Ed.2d 567 (1996). Although none of the factors is conclusive, the defendant's reluctance is the most important.

*See United States v. Thickstun,* 110 F.3d 1394, 1396–97 (9th Cir.1997).

Shilon presented no evidence of reluctance. He admitted offering to sell counterfeit Levi's products and to providing samples of such products. Even during discovery, Levi Strauss found another pair of "blank" counterfeit Levi's jeans at Shilon's offices. Accordingly, the decision to deny equitable relief was not an abuse of discretion.

### B. *Attorneys Fees and Investigation Costs Under 15 U.S.C. § 1117*

Shilon appeals the district court's grant of attorney's fees and investigation costs. "In counterfeiting cases, 'unless the court finds extenuating circumstances,' treble damages or profits and reasonable attorney's fees are available." *Intel Corp. v. Terabyte Intern., Inc.,* 6 F.3d 614, 620 (9th Cir.1993) (citing 15 U.S.C. § 1117(b)); *see e.g., Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1409 (9th Cir.1993) (affirming a district court's finding of extenuating circumstances and denial of damages under § 1117(b) where the infringer was wholly unaware of the plaintiff's trademark). Awards may also be limited by equitable considerations. *Intel,* 6 F.3d at 620. The district court's award of attorney's fees under 15 U.S.C. § 1117 is reviewed for an abuse of discretion. *Id.* at 621.

The phrase "extenuating circumstances" is not defined in the Lanham Act. However, the exception is extremely narrow. *Louis Vuitton S.A. v. Lee,* 875 F.2d 584, 588 (7th Cir.1989). Before the district court and on appeal Shilon provided no evidence of any "extenuating circumstances" that would mitigate against a grant of attorney's fees. He has done no more than reiterate his arguments that he should not be liable for a "naked offer" and that he was "entrapped." Even if we assume that these circumstances could constitute "extenuating circumstances" within the meaning of the Lanham Act, for the reasons discussed in Sections A.1 and A.3 above, the district court did not abuse its discretion when it found no extenuating circumstances and granted Levi Strauss attorney's fees and investigation costs.

### C. *Injunctive Relief*

The district court enjoined Shilon from using "any counterfeit, copy, or colorable imitations of the trademarks of Plaintiff Levi Strauss & Co. that is likely to cause confusion." Shilon argues on appeal that the injunction was granted unnecessarily. 15 U.S.C. § 1116(a) vests the district court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to pre-vent the violation of any right" of the trademark owner. We review the district court's decision to grant an injunction pursuant to 15 U.S.C. § 1116(a) for an abuse of discretion. *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir.1986) (reversing district court denial of an injunction).

A trademark plaintiff is "entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in [the plaintiff's] favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted." *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 532, 44 S.Ct. 615, 617, 68 L.Ed. 1161 (1924). Levi Strauss is not required to produce evidence that Shilon is likely to infringe again. *Polo Fashions,* 793 F.2d at 1135. "If [Shilon] sincerely intend[s] not to infringe, the injunction harms [him] little; if [he does], it gives [Levi Strauss] substantial protection of its trademark[s]." *Id.* at 1135–36. The district court acted well within its discretion in granting injunctive relief.

### CONCLUSION

Shilon admitted to offering to sell counterfeit Levi's jeans and components. Such an offer will suffice to create liability under the Lanham Act. The offer is not protected speech because it was an offer to commit an unlawful act. The district court did not abuse its discretion when it denied Shilon's request for equitable relief, nor was it an abuse of discretion for the district court to grant attorney's fees, investigation costs to Levi Strauss, and a permanent injunction against Shilon.

AFFIRMED.