**FORD MOTOR COMPANY, Plaintiff,**

v.

**Thomas LAPERTOSA, Defendant.**

No. 00–CV–75413–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 3, 2000.

Kathleen A. Lang, John E.S. Scott, Dickinson, Wright, Detroit, MI, Thomas R. Lee, Gregory D. Phillips, Cody W. Zumwalt, Howard, Phillips, Salt Lake City, UT, for plaintiff.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

CLELAND, District Judge.

### I.  BACKGROUND

■ Pending before the court is Plaintiff Ford Motor Company's ("Ford's") motion for a preliminary injunction, filed pursuant to Federal Rule of Civil Procedure 65 on November 30, 2000. Ford seeks to enjoin Defendant Thomas Lapertosa from auctioning, offering for sale, transferring, and using in any way the Internet domain name "fordrecalls.com." Ford also asks that the court order Defendant to transfer this domain name to Ford pending a resolution on the merits. Until recently, Defendant has been using the domain name

to host a website that purveys for sale hard-core pornographic images.[1]

### II.  STANDARD

■ Four factors are relevant in analyzing the merits, if any, of a motion for preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998). The United States Court of Appeals for the Sixth Circuit has recognized that these four considerations are "factors to be balanced, not prerequisites that must be met. Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." In re *DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985).

### III.  ANALYSIS

The court will grant Ford's motion for a preliminary injunction because Ford is likely to succeed on the merits and because Ford may suffer continued irreparable injury absent preliminary relief. Furthermore, granting injunctive relief is in the best interest of the public and will not substantially injure Defendant or any other person.

#### A.  Likelihood of Success on the Merits

Section 3002 of the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. Law No. 106–113, 106th Cong. 1st Sess.

---

1. The defendant prefers to denominate this material as "adult entertainment." Since the filing of this action, Defendant has removed the website and its associated images from the Internet. This does not, however, prevent the court from granting injunctive relief. *See American Brd. of Psychiatry & Neurology, Inc. v. Johnson–Powell*, 129 F.3d 1, 5 (1st Cir. 1997) ("[A] court does not necessarily chose its discretion by granting an injunction when the nonmoving party has voluntarily abated

its infringing activity. Whether a court goes too far in denying an injunction in the absence of something less than total reform is a fact-specific matter."); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 649 (3d Cir.1958) ("The cases are legion which say that where there has been a cessation of the conduct complained of, at any time prior to judgment, it is a matter for the exercise of the discretion of the court, as to whether an injunction should issue.").

(codified at 15 U.S.C. §§ 1114(1) and 1125), was passed into law on November 29, 1999, and provides, in relevant part, as follows:

CYBERPIRACY PREVENTION

A person shall be liable in a civil action by the owner of a mark ... if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark ...; and

(ii) registers, traffics in, or uses a domain name that

.  .  .  .  .

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark

15 U.S.C. § 1125(d)(1)(A).

There is no question that Defendant has registered the domain name fordrecalls.com and there is no dispute that he has used the site to purvey pornographic or "adult entertainment" materials. Further, there is no dispute that Ford is a famous name and a strong mark. Accordingly, the issues remaining upon which the court shall focus are, first, whether there are objective indications of a "bad faith intent to profit" by Defendant from his use of the Ford mark and, second, whether Defendant's use is dilutive of or confusingly similar to "Ford." For the following reasons, the court concludes that Ford is likely to succeed in proving these elements, and that the likelihood of success is strong.

1.  Bad faith intent to profit

The ACPA lists nine non-exclusive factors to be considered in determining whether a defendant has acted with bad faith intent to profit. *See* 15 U.S.C. § 1125(d)(1)(B). Although discovery may uncover additional evidence relevant to some of the factors, there are very strong indications presented in the evidence already before the court that Defendant has acted in bad faith. First, Defendant has no "trademark or other intellectual proper-

ty rights ... in the domain name;" also, "Ford" is not a surname or nickname of Defendant. *Id.* at § 1125(d)(1)(B)(I) & (II). Defendant claims no "prior use ... of the domain name in connection with the bonafide offering of any goods or services." § 1125(d)(1)(B)(III) & (IV).

Plaintiff asserts that "the only conceivable reason" for Defendant to have used the Ford mark in the domain name was to misappropriate Ford's goodwill. It is the court's conclusion that there has been a strong showing that Defendant's use of "Ford" can be ascribed to a desire to divert inquiring consumers from the mark owner's online sites, firstly, in a manner that could "harm the goodwill represented by the mark ... for commercial gain," and secondarily, "with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." § 1125(d)(1)(B)(V). The court notes that, to date, Plaintiff has assembled at least some evidence of actual confusion regarding the source of the fordrecalls.com site.

Finally, the fact that the Ford trademark is distinctive and famous is a further permissible indicator of Defendant's bad faith. *See* § 1125(d)(1)(B)(IX).

In his response memorandum. Defendant contends that his use of the domain name did not constitute bad faith because the domain name fordrecalls.com is not identical to the Ford mark and because there are many instances in which the name "Ford" in conjunction with the word "recalls" can be used in a non-infringing manner. In support of his argument, Defendant attaches several articles available on the Internet in which various people named Ford have "recalled" events in their lives. Defendant also points to former President Gerald Ford's rumored intention to write a book entitled "Ford Recalls," recapping his experiences in public life.

Defendant's argument in this regard is wholly unconvincing. All uses of the

phrase "Ford recalls" cited to refer to persons named Ford, and for the most part represent entirely incidental and non-commercial occurrences of the phrase. It is specifically the absence of such factors in this case that, under the ACPA, permits an inference of bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(B)(II) & (III). "Ford" is not part of the Defendant's name nor has Defendant pointed to any prior use of the domain name in connection with the bona fide offering of any goods or services. Additionally, the word "recall" is commonly used with reference to commercial products generally, and automobile products in particular, with industry "recalls" of potentially defective vehicles and associated parts. Indeed, such "recalls" are mandated by various government regulations, *see, e.g.,* 40 C.F.R. § 205.39; 49 C.F.R. 571.208; *see also,* 49 C.F.R. 573.1 *et seq.,* and often make headline news.

Thus, defendant's use of the word "recalls" in juxtaposition with the name of a famous line of automobiles, combined with the lack of any semblance of a legitimate reason for Defendant to register the domain name "fordrecalls" strongly indicates a bad faith intent to profit from "Ford," which everyone, including Defendant, agrees is a strong mark. Accordingly, Defendant's argument—that tagging a non-registered word to the end of a registered mark stands as evidence of the absence of bad faith—is not persuasive. *See Mattel Inc. v. Internet Dimensions, Inc.,* No. 99 Civ. 10066, 2000 WL 973745 (S.D.N.Y. July 13, 2000) (finding that use of domain name barbiesplaypen.com to display pornographic content tarnished goodwill of plaintiff's Barbie mark); *Lucent Technologies v. Johnson,* No. CV–00–05668, 2000 WL 1604055, *3 (C.D.Cal. Sept.12, 2000) (finding that use of domain name lucentsucks.com to display pornographic content

could constitute tarnishment of plaintiff's Lucent mark).

Based upon the foregoing considerations, the court concludes that Ford is highly likely to succeed on the merits of showing that Defendant has used the domain name fordrecalls.com with a bad faith intent to profit.

### 2. Confusion/Dilution

■ The court finds that Defendant's use of the domain fordrecalls.com, as a whole, is either "identical or confusingly similar to or dilutive of" the Ford mark. § 1125(d)(1)(A)(ii). The "ford" component is identical[2] to the mark, and the juxtaposition of "recalls" to an automobile brand creates a high likelihood of confusing similarity to that brand's interest in informing consumers of mandatorily—or voluntarily—recalled products.

Courts uniformly have held, and this court agrees, that the use of a famous trademark in a domain name used to purvey pornography constitutes dilution. *See Hasbro Inc. v. Internet Entertainment Grp. Ltd.,* 40 U.S.P.Q.2d 1479, 1996 WL 84853 (W.D.Wash.1996) (finding that Candyland trademark for children's games was diluted by website located at candyland.com showing sexually explicit pictures); *Toys 'R' Us, Inc. v. Akkaoui,* 40 U.S.P.Q.2d 1836, 1996 WL 772709 (N.D.Cal.1996) (same for website located at adultsrus.com); *Archdiocese of St. Louis v. Internet Entertainment Grp., Inc.,* 1999 WL 66022 (E.D.Mo.1999) (finding marks such as PAPAL VISIT 1999 were tarnished by defendant's use of papalvisit.com and papalvisit1999.com domain names for sites advertising adult entertainment web sites).

The court agrees that Defendant's use of the famous trademark "Ford" is the essence of trademark dilution: it tarnishes the goodwill developed by a trademark

---

**2.** The absence of capitalization is of no moment in environments such as internet search engines which need not be "case-sensitive." In such an environment, "ford" is indistinguishable from either "Ford" or "FORD."

*Accord Toys 'R' Us, Inc. v. Akkaoui,* 40 U.S.P.Q.2d 1836 (N.D.Cal.1996), wherein the website was spelled "adultsrus.com" without either capitalization or punctuation.

holder by causing it to become associated with pornographic material that is fundamentally inconsistent with the otherwise wholesome and commercial nature of the mark. *Accord, Lucent Technologies v. Johnson,* No, CV–00–05668, 2000 WL 1604055, *3 (C.D.Cal. Sept.12, 2000) ("The display of pornographic content on a site bearing someone's registered mark may constitute tarnishment."); *Mattel Inc. v. Internet Dimensions, Inc.,* No. 99 Civ. 10066, 2000 WL 973745 (S.D.N.Y. July 13, 2000). Accordingly, the court concludes that Ford is highly likely to succeed on the merits of showing that Defendant's registration and use of the domain name fordrecalls.com constitutes bad faith and is dilutive of the Ford mark.

### B. Harm Factors

■ Ford has established considerable goodwill in the Ford trademark and has expended billions of dollars in promoting the word as a symbol for high quality automotive products and services. (Complaint, ¶ 13.) Defendant's misappropriation of the goodwill Ford has developed in the mark by registering the Internet domain name fordrecalls.com and using the domain to purvey pornography significantly tarnishes the Ford reputation. Further, the misappropriation of the Ford mark by Defendant and others places a heavy burden on Ford, as it must continuously monitor domain names to determine whether the Ford mark is being used in a manner that diminishes the goodwill and reputation that it embodies. Thus Ford has suffered irreparable injury already, and in the absence of an injunction, nothing prevents Defendant from reasserting his presence on the Internet as "fordrecalls.com." Thus, Ford may in the future suffer similar irreparable injury.

Similarly, the public interest clearly tips in favor of Ford. Ford alleges that it re-cently has received telephone calls from customers indicating that they attempted to acquire information about Ford recalls by linking to the fordrecalls.com website. Such customers, as well as the public generally, have a strong interest in avoiding such confusion in the marketplace. *See Estate of Presley v. Russen,* 513 F.Supp. 1339, 1382 (D.N.J.1981) ("[T]he public is interested in fair competitive practices and clearly opposed to being deceived in the marketplace.")

In contrast, any potential harm to Defendant is easily calculable and can be remedied by money damages. *See Heinz v. Frank Lloyd Wright Foundation,* 1986 WL 5996, 229 U.S.P.Q. 201, 210 (W.D.Wis, 1986) (plaintiff's loss of goodwill not quantifiable, and therefore outweighs defendant's possible loss of sales which can be calculated). Furthermore, if Defendant sincerely intends not to infringe, as he repeatedly has claimed, the injunction can have no harmful effect, and gives Plaintiff "substantial protection of its trademark." *Polo Fashions, Inc. v. Dick Bruhn, Inc.,* 793 F.2d 1132, 1135 (9th Cir.1986).

In sum, the interest of Ford and the public in preserving the integrity of the Ford mark clearly outweighs any interest Defendant may have in preventing an injunction from issuing.[3]

### III. CONCLUSION

Because the court finds that the elements for granting a preliminary injunction are satisfied, IT IS ORDERED that Plaintiff Ford's motion for preliminary injunction is GRANTED.

IT IS ORDERED that Defendant Thomas Lapertosa is forthwith ENJOINED from auctioning, offering for

---

**3.** At oral argument, Defendant's counsel outlined the only issue of significance in this regard: Defendant's interest in preventing a biased attitude on the part of the court if a preliminary injunction were issued. Nothing peculiar to this case was pointed out, however-er, and as the court noted to counsel at argument, Defendant's reasoning applies with equal force to every motion for a preliminary injunction. The argument, in short, is unavailing.

sale, transferring, and using in any way the Internet domain name fordrecalls.com.

IT IS ORDERED that Defendant shall forthwith TRANSFER the domain name fordrecalls.com to Plaintiff Ford pending a resolution on the merits.[4]

---

4. "In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C).