*This opinion is subject to revision before final
publication in the Pacific Reporter.*

**2015 UT 80**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

INNOSYS, INC.,
*Appellant,*

*v.*

AMANDA MERCER,
*Appellee.*

No. 20110261
Filed August 28, 2015

Third District, West Jordan Dep't
The Honorable Robert Adkins
No. 090421501

Attorneys:

Daniel L. Day, Sandy, Erik A. Olson, Salt Lake City, for appellant

Kathleen M. McConkie, Michelle R. O'Neil, Bountiful,
Sara Pfrommer, Park City, for appellee

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which CHIEF JUSTICE DURRANT, and JUSTICE HIMONAS joined.

JUSTICE DURHAM filed a dissenting opinion, in which
JUSTICE PARRISH joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1    This is an appeal from a decision granting summary judgment to Amanda Mercer in a suit filed against her by InnoSys, Inc. Mercer worked for InnoSys, a technology company focusing on the defense industry, as an engineer. In its suit against her, InnoSys alleged that Mercer had violated a non-disclosure agreement and misappropriated company trade secrets. Mercer's disclosures and misappropriations were undisputed. During and after her employment with InnoSys, Mercer forwarded confidential

emails to her private Gmail account, copied a confidential business plan to a thumb drive, and placed protected information on the record in an administrative (unemployment) proceeding.

¶2 Despite these admitted disclosures, the district court granted summary judgment for Mercer. It did so on the basis of its determination that InnoSys had failed to make an adequate showing of harm. And in granting summary judgment, the district court entered rule 11 sanctions against InnoSys and awarded attorney fees to Mercer under Utah Code section 78B-5-825.

¶3 We reverse. Mercer's disclosures at least arguably sustain a presumption of harm to InnoSys—a presumption that stands unrebutted on the summary judgment record before us on appeal. Genuine issues of material fact regarding the risk of future disclosures also preclude summary judgment on InnoSys's claims. We accordingly reverse the decisions before us on appeal, including the decision entering rule 11 sanctions and awarding attorney fees to Mercer.

I

¶4 In January of 2008, immediately following Amanda Mercer's graduation from the University of Utah, InnoSys hired her as an engineer. Per its standard practice, InnoSys had Mercer sign a non-disclosure agreement (NDA). By signing, Mercer promised not to "copy, transmit, reproduce, summarize, quote or make any commercial or other use of any Protected Information, except for the benefit of [InnoSys]." She also agreed, upon termination, to "return to [InnoSys] all items and material in [Mercer's] possession or control which contain any Protected Information." And she acknowledged that "it may be impossible to measure in money the damage to [InnoSys] resulting from [a] breach [of the NDA]," and thus agreed that "in the event of any such violation or threatened violation, [InnoSys] shall be entitled to an injunction . . . to minimize or prevent damage to [InnoSys]."[1]

---

[1] The facts as stated here are in the light most favorable to InnoSys, the non-moving party. *See, e.g.*, *USA Power, LLC v. PacifiCorp*, 2010 UT 31, ¶ 65, 235 P.3d 749.

¶5 In time InnoSys became dissatisfied with Mercer's job performance. It accordingly fired her. Mercer later filed a claim for unemployment benefits with the Department of Workforce Services. That claim was initially denied by DWS. When Mercer appealed, she submitted a number of protected documents—protected emails and a confidential business plan—into the administrative record.

¶6 InnoSys was displeased. At a subsequent hearing, it asserted that Mercer's possession and disclosure of the emails and business plan constituted a breach of the non-disclosure agreement and threatened an "injur[y] [to] the company." In light of this concern, InnoSys's counsel pressed Mercer for details as to when and how she gained access to the protected material. In response, Mercer insisted that she "[had] permission from the IT department" to forward confidential InnoSys emails to a personal Gmail account. And, when asked why she didn't "leave" the confidential business plan with InnoSys at the time of her termination, Mercer asserted that she "didn't have it with [her]" at the time, indicating that she left it "[a]t home" because she "was asked to review it" previously and had been working on it at home over the weekend before she was fired.

¶7 The day after the hearing, Mercer—on the advice and in the presence of her sister and then-attorney—deleted all "emails" and "files" containing information about InnoSys. She then sent InnoSys a fax informing it of her actions. According to an affidavit from InnoSys, InnoSys's counsel made the decision to sue Mercer that same day and began drafting the complaint just three days later. A little less than two weeks after receiving Mercer's fax, InnoSys sent Mercer a demand letter informing her that, in InnoSys's view, she had spoliated evidence and should recover and return all protected information in her possession.

¶8 InnoSys then filed this suit. Its complaint asserted claims for breach of contract, misappropriation of trade secrets under the Uniform Trade Secrets Act (UTSA), and breach of fiduciary duty. Mercer subsequently filed a motion to dismiss (later converted to a motion for summary judgment), asserting that InnoSys's claims failed in light of its failure to establish any actual or threatened harm.

¶9 The district court granted Mercer's summary judgment motion in full. It also entered rule 11 sanctions against Innosys and awarded Mercer attorney fees. But the path to those decisions was a bit convoluted—involving a "conditional" ruling from the district court, a first round of limited discovery by the parties, a first motion to reconsider, a rule 11 hearing, two more motions to reconsider, three reassignments of the case (from the original judge to a second judge, back to the original judge, and then to a third judge), a second round of limited discovery, and a motion for attorney fees. We recount the relevant details of that procedural history below.

¶10 During the first round of discovery, Mercer changed her story regarding the use of her Gmail account and the timing of her acquisition of the confidential business plan. InnoSys's IT chief, Christopher Strong, submitted a declaration in which he stated he "did *not* instruct Ms. Mercer to use Gmail" and never "help[ed] her set up Gmail in any way." He reiterated this point in his deposition, stating that he could not recall ever having instructed Mercer on how she could forward her emails to her Gmail account. In response to a request for admission, Mercer then admitted "Chris Strong did not give permission to transfer InnoSys e-mail to her g-mail account," and that no particular person "gave her 'permission'" to forward her emails. She maintained however, that Strong "failed to tell her not to transfer emails when she told him her intention and he even went so far as to provide direction as to how she could establish the connection."

¶11 As to the business plan, Mercer testified in her deposition that she had received an email asking her to review the plan the day before her termination. But she said she was unable to access it via InnoSys's secure remote network. Thus, Mercer also changed her story regarding the business plan. She admitted that she did not have the business plan in her possession at home the day before she was fired, but instead copied it on the day of her termination. And when pressed on why her story had changed, Mercer responded that she felt InnoSys was "pressuring [her]" at the earlier DWS hearing.

¶12 This discovery was followed by additional briefing and a hearing in the district court. At the hearing, the court "conditionally" dismissed InnoSys's UTSA, breach of contract, and breach of

4

fiduciary duty claims. The dismissal was with prejudice, but "condition[ed]" on the outcome of further forensic discovery.[2] The court also expressed its concerns that InnoSys had yet to produce a copy of the NDA signed by Mercer.

¶13 InnoSys then proceeded with a preliminary forensic analysis of Mercer's email accounts and her thumb drive. Its expert concluded that Mercer's deletion of the "sent" and "trash" folders in her Gmail account prevented anyone from determining "what particular emails she copied from her InnoSys account to her Gmail accounts and when," "what InnoSys related documents or emails were sent from this Gmail account to other email accounts or to third parties and when," and which "sent or received items were deleted" and when they were deleted. The expert also concluded that at some point prior to April 21, 2010, Mercer performed a data wipe on the thumb drive. According to the expert, this deleted all data and made it "impossible to determine from the drive itself when the data wipe occurred." Finally, the expert concluded that someone had reformatted the thumb drive, that this was a "destructive act," and that it had occurred either on or prior to April 21, 2010.

¶14 The parties then returned to the district court on two motions by InnoSys—one to reconsider, and another seeking spoliation sanctions against Mercer. The district court rejected the spoliation claim and confirmed the dismissal of InnoSys's claims. First, the district court concluded that InnoSys's claims all hinged on the existence of an actual NDA signed by Mercer, which InnoSys had not yet located and thus had not produced. And, in response to InnoSys's proposal to submit a copy of a *sample* agreement evidencing the NDA Mercer would have signed, the court suggested that such a document would be barred by the best evidence rule, while also noting a concern that the sample agreement may have been "altered."

---

[2] We are aware of no basis in our civil rules for a *conditional* dismissal of this nature. But the district court styled its order in this way, and no party raised any objection (in the district court or on appeal). So we do not resolve the matter.

¶15 Second, the district court also reinforced its conditional ruling on the merits of InnoSys's claims. It held that InnoSys had failed to produce evidence of actual or threatened harm and thus that there was "no genuine issue as to any material fact" and Mercer was "entitled to judgment as a matter of law." Finally, the district court ruled that Mercer "neither knew nor should have known that there was anticipated litigation at the time she deleted the electronic information" at issue, and that her actions were a "good-faith attempt to appease InnoSys." On that basis, the district court rejected InnoSys's claim of spoliation.

¶16 At about this same time Mercer also filed a rule 11 motion. The district court granted the motion. It based its decision on several factors: (1) the missing NDA, (2) InnoSys's alleged repeated assurances that it actually had the NDA, (3) the alleged "doctored" nature of the replacement NDA, (4) InnoSys's alleged retaliatory motives for filing suit, and (5) the fact that InnoSys could not prove actual or threatened harm.

¶17 InnoSys then filed a petition for interlocutory review. That petition was denied. At that point the case was reassigned to a new judge. InnoSys then filed a second motion to reconsider—a motion it withdrew in part when the case was later returned to the original judge. Then the case was again reassigned to yet another new judge. That judge allowed forty-five days of additional discovery. InnoSys chose not to pursue any further discovery. But at about this time it did finally locate Mercer's signed NDA. And it then filed its third motion to reconsider. Mercer then filed a motion for an award of attorney fees.

¶18 The district court again ruled against InnoSys and in favor of Mercer. It concluded that the discovery of the NDA changed nothing, since "there was no objectively reasonable basis to believe that Mercer had harmed InnoSys or was threatening to do so." And it upheld the rule 11 sanctions on the ground that InnoSys had repeatedly implied that it possessed a signed copy of Mercer's NDA. As to spoliation, the district court reiterated its earlier conclusion that Mercer had no duty to preserve documents because she had no way of knowing of threatened litigation at the relevant time.

¶19 The district court also granted Mercer's motion for fees under Utah Code section 78B-5-825 (authorizing an award of fees to a "prevailing party" if the court finds the losing claims were "without merit" and not brought "in good faith"), awarding a sum of $229,481.58. In so doing it cited InnoSys's "hast[y]" decision to sue prior to locating her NDA as evidence of the "retaliatory nature of the lawsuit" and hence InnoSys's "demonstrable" lack of "good faith." The court then interpreted the NDA in a manner sustaining an award of all of Mercer's fees (rather than an amount apportioned to the claims deemed frivolous under Utah Code section 78B-5-825).

¶20 InnoSys filed this appeal. We initially heard oral argument in May of 2013. Then, when we were unable to reach a decision prior to the retirement of Justice Ronald E. Nehring (who sat on the panel that heard the initial appeal), we reheard the case on March 4, 2015. Our review of a decision on summary judgment is de novo. *Bahr v. Imus*, 2011 UT 19, ¶¶ 12–18, 250 P.3d 56.

II

¶21 Some of the key facts in this case are undisputed. As a threshold matter, it is undisputed that InnoSys eventually found and produced the NDA signed by Mercer—a development eliminating one of the grounds for the district court's entry of summary judgment and for sanctioning and awarding fees against InnoSys.[3] There is likewise no dispute, at least with respect to Mercer's summary judgment motion, that Mercer misappropriated material belonging to InnoSys that is protected under the Uni-

---

[3] That ground was already questionable under our evidentiary rule allowing secondary evidence to replace best evidence when "all the originals are lost or destroyed, and not by the proponent acting in bad faith." UTAH R. EVID. 1004. From all that appears, there were at least genuine issues of fact as to whether InnoSys's inability to find the lost NDA was a result of any sort of "bad faith." That seems unlikely, as it was in its interest to locate and produce the document. But we need not address that issue in detail here, as InnoSys's discovery of the original NDA mooted the district court's concerns regarding "best evidence."

form Trade Secrets Act and under the NDA. The core remaining question on the merits of InnoSys's claims concerns the question of its evidence of harm. InnoSys's purported failure to present such proof formed the basis of the district court's decision below.

¶22 According to the district court, Mercer's "use of the InnoSys emails at the unemployment hearing . . . did no damage to InnoSys and did not create any threatened harm." The district court raised the same concern regarding Mercer's use of the confidential business plan and her use of a private Gmail account. Mercer echoes these same points on this appeal. She contends that InnoSys failed to produce "evidence of any damages suffered as a result of the alleged wrongdoings by Mercer."[4]

¶23 We reverse. We find sufficient evidence of threatened harm—or at least genuine issues of material fact concerning such harm—to defeat Mercer's motion. First, we conclude that InnoSys

---

[4] The dissent seeks to distinguish InnoSys's "damages claims" from its "claims for injunctive relief," *see infra* ¶ 65 and concludes that evidence of actual economic harm was required to sustain the former, while the latter fails absent proof of a threat of future harm, *infra* ¶¶ 66–70 (economic harm), 71–73 (future harm). But the case was neither pleaded nor argued in the manner formulated by the dissent. InnoSys never asserted separate "claims" for damages or injunctive relief. It simply pleaded claims for misappropriation of trade secrets and for breach of the NDA. The fact that its prayer for relief sought both damages and an injunction did not create two separate sets of claims, only two requested remedies. So the lack of proof of economic harm is beside the point on this motion before us on appeal. If InnoSys has a viable basis for injunctive relief on its claims for misappropriation and for breach of contract—as we conclude it does for reasons explained below—then the fact that the record as it now stands may not sustain a damages award is beside the point.

Thus, the dissent errs in arguing for "summary judgment as to InnoSys's damages claims," *infra* ¶ 69, as the case as pleaded and argued does not concern "damages claims." Mercer never sought "partial summary judgment" on such claims, *infra* ¶ 70, and we are accordingly in no position to award it.

has asserted a prima facie case of misappropriation of trade secrets under the UTSA, and hold that such a showing at least arguably sustains a presumption of irreparable harm. Second, we deem that presumption—along with affirmative evidence of threatened harm—to also sustain a prima facie case of breach of the NDA. Third, for these and other reasons, we reverse summary judgment on Innosys's breach of fiduciary duty claim. And finally, we reverse the entry of rule 11 sanctions and attorney fees against InnoSys.

## A. Misappropriation Under the UTSA

¶24  Under our Uniform Trade Secret Act, a prima facie case of misappropriation is established on the basis of two essential elements: existence of a protectable "trade secret" of a plaintiff and demonstration of "misappropriation" by a defendant. UTAH CODE § 13-24-2. These elements are at least arguably established under the undisputed facts of this case.[5]

¶25  First, InnoSys appears to have established the existence of protectable trade secrets in its business plan and other confidential information. It is undisputed that such materials (a) "derive[] independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from [their] disclosure or use," and (b) are "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." *Id*. § 13-24-2(4).

---

[5] In so concluding, we do not rule that InnoSys is entitled to summary judgment, as it made no such motion and that question is accordingly not before us on this appeal. But the question of Mercer's right to summary judgment encompasses more than just the issue whether there are genuine issues of material fact. In assessing Mercer's motion, we must also decide whether she is entitled to judgment as a matter of law. UTAH R. CIV. P. 56(c). We resolve that question, at least in part, on the basis of our determination that InnoSys has arguably made a prima facie showing of infringement under the UTSA and breach of the NDA, which showing sustains a presumption of irreparable harm.

¶26 Second, misappropriation was also evident on the summary judgment record. Under the Utah statute, misappropriation may be established upon proof of either unlawful disclosure or unlawful acquisition. *Id.* § 13-24-2(2)(a), (b). The record includes undisputed evidence of both.

¶27 It was undisputed that Mercer disclosed the InnoSys trade secrets by forwarding them from the secure company computer system to her unsecure Gmail account and by filing them with the DWS. This at least arguably amounts to misappropriation by unlawful disclosure under Utah Code section 13-24-2(2)(b). The definition of "misappropriation" under this provision encompasses "disclosure . . . of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Id.* § 13-24-2(2)(b). Mercer at least arguably disclosed InnoSys's trade secrets to Google and to the DWS without InnoSys's consent. And she did so even though she knew or should have known that she had a duty to maintain the secrecy of that information.

¶28 Alternatively, there was also evidence of misappropriation by unlawful acquisition under Utah Code section 13-24-2(2)(a). This subsection defines misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *Id.* § 13-24-2(2)(a). Mercer at least arguably violated this subsection by copying a confidential InnoSys business plan onto a thumb drive under suspicious circumstances on the day of her termination. Initially, Mercer claimed that her acquisition of the business plan was legitimate and proper—that she had simply taken it home with her to review in the ordinary course of her employment. But she eventually recanted that assertion, admitting that she had copied it onto a thumb drive on the day she was terminated. And she never provided any explanation for why she took the thumb drive home (after having been fired) and never returned the information. That is further evidence of misappropriation—at least enough evidence to establish a genuine issue of material fact as to Mercer's acquisition of the business plan by "improper means." *See Id.* § 13-24-2(1) (defining "[i]mproper means" as "theft, brib-

ery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means").

¶29 The district court effectively acknowledged InnoSys's proof of misappropriation in its disposition of Mercer's motion for summary judgment. Instead of finding a lack of unlawful disclosure or acquisition, the district court found that "[a]ny and all disclosures regarding InnoSys made by Defendant whether verbal or in the form of emails, specifically to Workforce Services; to the Administrative Law Judge; and to defendant's attorneys were *necessary and appropriate in dealing with the issue of unemployment compensation*." (emphasis added) Yet that conclusion only underscores the strength of InnoSys's claim. The UTSA states no basis for a "necessary and appropriate" defense to the unauthorized disclosure of a trade secret. And absent such basis, we cannot conclude that Mercer is entitled to judgment as a matter of law; InnoSys has at least arguably established a prima facie case of misappropriation.

¶30 Mercer's only challenge to this point on appeal is her vague assertion that she was entitled as an InnoSys employee "to complete the work she was hired to perform," and that she therefore "never obtained a trade secret by improper means." But as noted above, misappropriation may be established under subsection (2)(b) upon proof of unauthorized disclosure *or* use, without proof of acquisition by improper means. *See id.* § 13-24-2(2)(b)(ii)(B) (defining misappropriation as "disclosure or use of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use"). The undisputed evidence shows that Mercer copied protected trade secrets onto her personal email account and thumb drive, allowing her to take those secrets with her after her employment ended. And she did so despite having signed a non-disclosure agreement, showing that she owed a duty to InnoSys to maintain the secrecy of those trade secrets and limit their use. These facts easily satisfy the statutory standard when viewed in the light most favorable to InnoSys on summary judgment.

¶31 In any event, as also noted above, there is evidence of misappropriation by Mercer in the form of acquisition by "improper means" under sub-section (2)(a). The evidence under this sub-section focuses on the suspicious circumstances of Mercer's copying of the confidential business plan onto a thumb drive on the day of her termination. When viewed in the light most favorable to InnoSys as the non-moving party, the record indicates that there is at least a genuine issue of material fact as to whether Mercer's appropriation of the business plan amounted to "theft," "breach of a duty to maintain secrecy," or "espionage through electronic or other means." *Id.* § 13-24-2(1).[6]

¶32 The above facts are at least arguably sufficient to sustain a prima facie case of misappropriation under the UTSA. And these same facts are sufficient to allow InnoSys to withstand Mercer's motion for summary judgment. First, under well-settled principles of trade secret law, InnoSys's prima facie case gives rise to a rebuttable presumption of irreparable harm. Second, despite some contrary arguments raised by the dissent, the presumption has not been rebutted by Mercer on the record before us on summary judgment. We reverse summary judgment on that basis.

### 1. The Presumption of Irreparable Harm

¶33 A trade secret is a right of property.[7] Such rights are protected by a legal presumption of harm.[8] Thus, a trespass on a right

---

[6] It is black letter law that "[a]n appellate court . . . . views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 18, 199 P.3d 917 (internal quotation marks omitted). Yet the dissent declares that "inconsistencies in Ms. Mercer's testimony are susceptible to an innocent explanation," and theorizes alternative "innocent" reasons for Mercer's behavior. *Infra* ¶ 93. This theorizing is incompatible with our summary judgment standard.

[7] *Microbiological Research Corp. v. Muna*, 625 P.2d 690, 696 (Utah 1981) ("A trade secret . . . is under the majority view held to be property, with power in the owner thereof to make use of it to the exclusion of the world or to deal with it as he pleases. As a prop-

(continued…)

of property is actionable upon any physical invasion of it, regardless of whether the invasion causes measurable damage.[9] The presumption of harm flows from the very nature of a property right, which at its core is a right to exclude others.[10] With this in mind, the law presumes that the infringement of a property right is

---

erty right, the trade secret is protected against its appropriation or use without the consent of the owner." (footnote omitted)).

[8] RESTATEMENT (SECOND) OF TORTS § 158 (1965) (a trespasser is "subject to liability . . . irrespective of whether he thereby causes harm to any legally protected interest of the other"); 8 DAVID A. THOMAS, THOMPSON ON REAL PROPERTY § 68.01(2d ed. 2005) ("[A] trespass is actionable when any physical invasion at all can be proved, no matter how slight or inconsequential."); 8 RICHARD R. POWELL, POWELL ON REAL PROPERTY § P6.07[1] (2015) ("Trespass . . . is actionable even if no damage actually occurs as a result of the entry."); *see also Purkey v. Roberts*, 2012 UT App 241, ¶ 19, 285 P.3d 1242 (neighbor who built a fence on adjoining property was liable for trespass "irrespective of whether [his neighbors] suffered any harm other than to their legally protected interest").

[9] POWELL, *supra* 8, § P6.07[5][b]; THOMPSON, *supra* 8, § 68.06(d)(2).

[10] *Alliant Techsystems, Inc. v. Salt Lake Cnty. Bd. of Equalization*, 2012 UT 4, ¶ 23, 270 P.3d 441 ("[I]t is well recognized that an owner traditionally has rights to use and possess property to the exclusion of others."). The legally protectable interests of an owner of property encompass the right of exclusion, and the law presumes that an infringement of that right is inherently harmful. RESTATEMENT (SECOND) OF TORTS § 163, cmt. d ("The wrong for which a remedy is given . . . consists of an interference with the possessor's interest in excluding others from the land."); 1 DAN B. DOBBS, ET AL., THE LAW OF TORTS § 49 (2d ed. 2011) ("The gist of the tort [of trespass] is intentional interference with rights of exclusive possession; no other harm is required."); W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 13 (5th ed. 1984) (action of trespass, at bottom, is "[a]n interference with [the] exclusive possessory interest").

harmful, and sustains a remedy of an injunction to vindicate that right and prevent future harm.[11]

¶34 The property right in a trade secret partakes of these elements. A long-settled principle of trade secret law recognizes a presumption of harm upon proof of misappropriation. "Over the years, courts have often ruled that a trade secret claimant is entitled to a rebuttable presumption of irreparable harm for the purposes of injunctive relief . . . ." 4 ROBERT M. MILGRIM & ERIC E. BENSEN, MILGRIM ON TRADE SECRETS § 15.02[1][c] (2013) (citing extensive cases).[12] The basis of this presumption is the difficulty of measuring the extent of actual economic injury. The courts have acknowledged that "it is axiomatic that unprotected disclosure of a trade secret destroys the secret and [that] it is self-evident that unauthorized use of a trade secret ordinarily enlarges the risk of unauthorized disclosure." *Id.* And they have consistently noted that the impact on the value of a trade secret "often will not be readily compensable in damages because of the difficulties involved in valuing the consequences of the destruction of a trade secret." *Id.* These concerns combine to sustain the basis for a presumption of irreparable harm, and a right under the UTSA to the

---

[11] DOBBS, *supra* 10, § 56 ("Courts will issue injunctions to prevent trespasses that threaten to continue or to be repeated."); POWELL, *supra* 8, § P6.07[5][b] ("The nature of the tort of trespass indicates that it may be continuous or repeated or threatened to be repeated. Injunctive relief is appropriate in any of these cases.").

[12] *See also* 2 RUDOLF CALLMANN, CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 14:39 (4th ed. 2015) (explaining that "[a] remedy at law normally is inadequate" in cases of trade secret misappropriation, and noting that "an injunction is a proper response of equity"); 4 DAN B. DOBBS, ET AL., THE LAW OF TORTS , § 739 ("[W]here future revelation is threatened, the owner may frequently obtain an injunction."); *Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 783 N.Y.S.2d 758, 772 (N.Y. Sup. Ct. 2004) (same).

issuance of an injunction without regard to proof of measurable economic injury to the plaintiff.[13]

¶35 This principle is well-ingrained in the caselaw under the UTSA[14] and under related Utah cases.[15] The presumption of irreparable harm is widely endorsed and rarely questioned. And

---

[13] The point is not "that a plaintiff's *allegations* of threatened future use or disclosure are particularly trustworthy." *Infra* ¶ 76 (emphasis added). It is that a prima facie case of misappropriation establishes a presumption of irreparable harm. Such a presumption, moreover, is not conclusive. It may be rebutted by a defendant. Absent rebuttal, however, the benefit of the doubt on the need for an injunction goes to the party whose trade secret has been misappropriated. That is particularly appropriate on a motion for summary judgment filed by the accused misappropriator, given that the non-moving party is entitled to reasonable inferences in its favor.

[14] *See, e.g.*, *Kendall Holdings, Ltd. v. Eden Cryogenics LLC.*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008) (under the Ohio UTSA, "irreparable harm is generally presumed"); *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004) (under the Illinois UTSA, "[t]here is a presumption of irreparable harm to the plaintiff in cases of trade secret misappropriation"); *Union Nat'l Life Ins. Co. v. Tillman*, 143 F. Supp. 2d 638, 641–42 (N.D. Miss. 2000) (under the Mississippi UTSA, "to be awarded an injunction," a plaintiff "need not demonstrate irreparable injury; a violation of the Act itself constitutes irreparable injury"); *Tracer Research Corp. v. Nat'l Env't Serv. Co.*, 843 F. Supp. 568, 582 (D. Ariz. 1993) (once a plaintiff has established misappropriation under the Arizona UTSA, "it is presumed that it will suffer irreparable and immediate harm").

[15] *See Sys. Concepts, Inc. v. Dixon*, 669 P.2d 421, 428 (Utah 1983) (holding that "a likely or actual 'threatened' harm" is sufficient to sustain injunctive relief, as it is "an *anticipatory* remedy purposed to *prevent* the perpetration of a *threatened* wrong or compel the cessation of a *continuing* one," and concluding that a former employee working for a competitor is enough to infer such future harm (internal quotation marks omitted)).

where it has been questioned, it has usually been only to clarify that the presumption may be rebutted,[16] as in circumstances

---

[16] *See* cases cited *supra* 14. The dissent proffers a different standard. Citing *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118–19 (2d Cir. 2009), it suggests that the presumption of irreparable harm should not apply absent "a showing of future harm through unauthorized disclosure." *Infra* ¶ 77. But the *Faiveley* formulation assumes away the problem presented here; it acknowledges that a "rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets." 559 F.3d at 118. The key question concerns whether there is a sufficient "risk of 'further dissemination or irreparable impairment of value.'" *Infra* ¶ 77 (quoting *Faiveley*, 559 F.3d at 118). For reasons explained below, we conclude that there is a sufficient risk to sustain the presumption in this case— particularly given the summary judgment posture of the case. In any event, the *Faiveley* standard is not universally accepted. On its face, the *Faiveley* opinion acknowledges decisions in the same circuit holding "that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated." 559 F.3d at 118. And other courts have repudiated the *Faiveley* analysis. *See E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 894 F. Supp. 2d 691, 707 (E.D. Va. 2012) (criticizing *Faiveley* as "remarkable, overly simplified," and inconsistent with the basic premise that "difficulty in establishing monetary damages permits injunctive relief").

The key question is who gets the benefit of the doubt as to the threat of future harm in a case of alleged misappropriation of a trade secret. The dissent would give it to Ms. Mercer, entitling her to summary judgment absent proof by InnoSys of an actual threat of future disclosure. We see the matter differently. Because InnoSys has at least arguably established a prima facie case of misappropriation, InnoSys gets the benefit of the doubt (particularly on summary judgment)—a benefit translating into a rebuttable presumption of irreparable harm. There is no need for a "rebuttable presumption," after all, if proof is required at the outset.

where the trade secret has become so generally known that it no longer exists.[17]

¶36 And even when it is questioned, it is not generally on the grounds identified by Mercer and echoed in the dissent. *See infra* ¶¶ 74, 76–84 (requiring, as a precondition of the presumption of irreparable harm, proof of a likelihood of disclosure beyond the initial misappropriation). When the courts have questioned the presumption of irreparable harm, they have not generally required proof of a likelihood of additional disclosures or of measurable economic harm as a prerequisite to the issuance of injunctive relief.[18] Instead, the courts have simply suggested that the presumption of irreparable harm may be rebuttable, as in circumstances where the trade secret has become so generally known that it no longer exists.

¶37 Those circumstances are not presented here. In fact, as explained below, *infra* ¶¶ 55–59, here the presumption of irreparable

---

[17] *DVD Copy Control Ass'n Inc. v. Bunner*, 10 Cal. Rptr. 3d 185, 194–95 (Cal. Ct. App. 2004) (reversing entry of preliminary injunction in the face of evidence that the secret may have become "generally known," such that "a preliminary injunction prohibiting disclosure would have done nothing to protect the secret because the secret would have ceased to exist").

[18] That would turn the venerable element of irreparable harm on its head. The essence of this element is in reserving equitable relief for cases where the evidence of measurable economic damage is unreliable—rendering the legal remedy of monetary damages inadequate. It would turn that principle upside down to require proof of measurable economic harm, or even a likelihood of disclosure beyond the initial misappropriation, as a prerequisite to injunctive relief. The "threat of disclosure of the trade secret" entitles trade secret claimants "to a rebuttable presumption of irreparable harm for the purposes of injunctive relief." MILGRIM § 15.02[1][c]. And here that threat is easily present given that Mercer has (a) shown a willingness to disclose the secrets before; and (b) forensic analysis cannot determine whether she still has the misappropriated material, and she is unwilling to submit her hard drives and e-mail account to further analysis.

harm was affirmatively reinforced by evidence of irreparable harm presented by InnoSys. So InnoSys's only deficiency was in failing to quantify the monetary impact of Mercer's misappropriation, and that failure is beside the point under the authority cited above.

### 2. Applicability and Rebuttal of the Presumption

¶38  In an attempt to avoid or rebut the presumption of irreparable harm, the dissent alleges that there is no "evidence of a threatened disclosure" of trade secrets given Mercer's assertion that she "deleted the [InnoSys material] from her Gmail account and the thumb drive" and InnoSys's alleged failure to establish Mercer's "continued possession of InnoSys's documents." *Infra* ¶ 81. On that basis, the dissent insists that InnoSys's claim fails in light of InnoSys's purported failure to present evidence of threatened harm sufficient to sustain an injunction.

¶39  The dissent's approach falls short on two grounds: (a) the issue it raises was not preserved; and (b) Mercer's deletion of her email messages fails to rebut the presumption of irreparable harm in the circumstances of this case.

### a. Preservation

¶40  First, the issue raised by the dissent is not properly before us. Mercer never asserted—in the district court or on appeal—that there was no basis for an injunction *because* InnoSys had not rebutted Mercer's assertion that she "deleted" the files in question.[19]

---

[19] Mercer has asserted that "InnoSys failed to produce evidence of any actual or threatened harm." But the basis of that argument has always been that InnoSys failed to "provide a single shred of evidence of any actual or threatened damage" to its business. So the focus of InnoSys's briefing and argument has been on the impact on its business, not on Mercer's continued access to InnoSys's files.

On one narrow point, Mercer has asserted that her deletion of InnoSys material from her Gmail account and thumb drive "mooted" one of InnoSys's claims. But that argument was limited

(continued…)

Thus, we cannot properly fault InnoSys for failing to marshal "evidence that Ms. Mercer had retained electronic files containing InnoSys's trade secrets." *Infra* ¶ 83. That was not an issue in the district court and it is not an issue on appeal.

¶41 We have the authority to affirm on grounds that differ from those relied on by the court below.[20] But that authority is limited. It is confined to circumstances in which the alternative grounds for affirmance are "apparent" on the face of the record. *Commercial Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 2012 UT 49, ¶ 14, 285 P.3d 1193. And that is hardly the case here (for reasons explained below). InnoSys, moreover, is at least entitled to an opportunity to be heard on this matter. We will not affirm sum-

---

to InnoSys's *replevin* action—a claim that is not before us on this appeal. The limited nature of that argument only underscores the problem. It emphasizes that InnoSys could not properly have anticipated the need to establish Mercer's continued access to InnoSys files as a predicate to the showing of threatened harm necessary to justify an injunction.

[20] As the dissent indicates, we have previously asserted the right to affirm on a ground "not raised in the lower court." *Infra* ¶ 85; *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 5 n.1, 284 P.3d 616 (internal quotation marks omitted). But the general authority to affirm on unpreserved grounds does not sustain the propriety of so doing in any particular case. We should do so, in any event, only where the basis for affirmance is "apparent on the record." *Id.* (internal quotation marks omitted). And in this case the dissent's basis is simply not apparent—and cannot be, given that Mercer never challenged InnoSys's right to an injunction on the ground that it had not rebutted Mercer's assertion that she deleted the files in question, so InnoSys had no reason to put such evidence in the record. (For that reason, any lack of evidence is in no way telling, and no basis for affirmance.) The general question of "whether evidence of a threatened harm precluded summary judgment" on InnoSys's request for injunctive relief was certainly before the court. *Infra* ¶ 86. But the specific issue of a need to rebut Mercer's assertion that the files in question had been deleted was neither raised nor ruled upon.

mary judgment against a claimant on a ground on which it has never been heard.

### b. Mercer's "voluntary reform"

¶42 The dissent's approach ultimately fails on its merits in any event. A defendant's voluntary reformation and cessation of unlawful activity forecloses the need for an injunction only in the rare case in which the defendant's reform is "irrefutably demonstrated and total." 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:11 (4th ed. 2015) (citing cases). In other words, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013).[21]

---

[21] The dissent seeks to avoid the burden-shifting impact of these precedents by attempting to distinguish Mercer's circumstances from those at issue in the cited cases. Thus, while a voluntary reformer "retains the capability to reinitiate the harmful conduct in the future," the dissent insists that Mercer "undisputedly deleted InnoSys's emails and files," such that "the future use or dissemination of the files is not just a matter of self-restraint." *Infra* ¶ 88. And in light of such evidence, the dissent faults InnoSys for not "produc[ing] evidence that Ms. Mercer retains the capacity to use its documents in the future." *Id.* That response falls short because it assumes facts not in evidence, and on a point not raised below, and gives the benefit of the doubt on the matter to the moving party on summary judgment. Because all reasonable inferences go to InnoSys (as the non-moving party), we cannot presume that Mercer lacks anything but self-restraint. And her failure to make an irrefutable, clear showing of a lack of capacity is significant.

The point is not to shift the burden to Mercer "to prove that an injunction should not issue." *Infra* ¶ 90. InnoSys retains that bur-

(continued…)

¶43 Under this authority, InnoSys is not required to accept Mercer's claim of voluntary compliance at face value. Instead the burden shifts to Mercer to carry the "formidable burden of showing that it is absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur." *Already, Inc.*, 133 S. Ct. at 727(citing *Friends of the Earth*, 528 U.S. at 190). And here she has failed to do so; the record, in fact, includes ample grounds for suspicion of Mercer's self-serving assertions as to her destruction of her copies of InnoSys's trade secrets, *see infra* ¶¶ 10–11, 28, 31, and those grounds alone are enough to defeat summary judg-

---

den. By carrying the burden of establishing a *prima facie* case of misappropriation, however, InnoSys shifted to Mercer the burden of showing that her alleged voluntary reform was enough to allay its concerns of irreparable harm. Such a showing, moreover, concerns more than just the question of mootness. *See id.* (suggesting that the issue is purely one of mootness). The voluntary reform issue also goes to the risk of threatened harm, and in the circumstances of this case the burden fell to Mercer to show that her voluntary reform from her apparent misappropriation cannot reasonably be expected to recur.

Mercer failed to do so. First, the notion that Mercer may have destroyed existing electronic documents does not rule out the possibility that she retained other copies elsewhere. The forensic expert never ruled that out. He said that "*it is difficult to verify one way or the other* whether InnoSys emails were forwarded to third parties, whether InnoSys data was moved to other external drives, whether other email accounts were used to forward data, or whether InnoSys data was used in some other way, shape, or form." (emphasis added). And the forensic analysis found over 2000 hits for "innosys" on Mercer's hard drive, and concluded that even after being deleted, files still exist in unallocated and slack space on the hard drive until they are overwritten by saving a new file in that space. The report also cautioned that no searches for words other than "innosys" were conducted, and that keyword searches are limited in what they find. The expert hardly gave reason for a clean bill as to Mercer; instead he recommended a more complete forensic examination.

ment.[22] Thus, to the extent evidence of Mercer's possession of trade secrets is somehow lacking, it is Mercer, and not InnoSys, whose case is undermined. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986).[23]

---

[22] *See* 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:11 (4th ed. 2015) ("Even if the defendant has ceased wrongful activities, an injunction should be granted where defendant's intentions are in doubt.").

[23] The dissent's cases are distinguishable on the above grounds. Thus, the notion that the threatened harm targeted by the injunction is a risk "too 'remote and speculative' to merit an injunction," *infra* ¶ 84 (quoting *Almurbati v. Bush*, 366 F. Supp. 2d 72, 78 (D.D.C. 2005)), has no application here, where InnoSys has made a prima facie showing of misappropriation and the burden of proving reform has shifted to Mercer. In *Almurbati,* the plaintiffs "extensively rel[ied] on news reports and articles that suggest that the government is involved in a conspiracy," as well as declarations only the plaintiffs were privy to from unidentified officials who had no decision-making authority. *Id.* It was on that basis that the *Almurbati* court found that there was "no evidence in the record . . . support[ing] the petitioners' allegations." *Id.* That is far from the case here. And unlike in *Am. Airlines, Inc. v. Imhof*, 620 F. Supp. 2d 574, 580 (S.D.N.Y. 2009), Mercer has hardly "made clear" that third parties "would not receive" the InnoSys trade secrets. Instead there is a substantial risk of such disclosure—for all the reasons set forth above.

The dissent also relies on *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, 128 P.3d 1151, but the facts of that case support our conclusions. In *Johnson*, this court affirmed the district court's grant of injunctive relief to the plaintiffs because the defendant failed to contest the plaintiff's sworn evidence with his own specific sworn evidence. *Id.* ¶¶ 21–27. That is also the case here. InnoSys has produced evidence arguably supporting a prima facie case of misappropriation, with its presumption of irreparable harm, and reinforced it with evidence arguably establishing irreparable harm. Mercer has, at most, shown there are genuine issues of this mate-

(continued…)

¶44  The *Polo Fashions* case is instructive. In that case the district court refused to grant a permanent injunction against a trademark infringer on the ground that the plaintiff presented no evidence that the defendant planned to repeat its acts of infringement. *Id*. at 1135–36. In light of the nature of the infringement and defendant's refusal to stop until the risk of liability was apparent, the Ninth Circuit reversed under an abuse of discretion standard, holding that the plaintiff has no burden to introduce evidence that defendants are likely to infringe again. *Id*. The court's commentary is equally applicable here: "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection." *Id*. at 1135.

¶45  The same should be said of Mercer. If she sincerely intends not to infringe the InnoSys trade secrets, an injunction harms her little; if on the other hand she harbors such ideas, an injunction will provide substantial protection for InnoSys.

¶46  On this record, Mercer has failed to rebut the presumption of irreparable harm. There are, at a minimum, genuine issues of material fact defeating her motion for summary judgment.[24] Even without the presumption of irreparable harm, moreover, InnoSys's claim would likely survive summary judgment in light of the actual proof of irreparable harm advanced by InnoSys (and described in part II.B. below).

B. Breach of the Non-Disclosure Agreement

¶47 Much of the above also suffices to foreclose summary judgment on InnoSys's claim for breach of the NDA. The pre-

---

rial fact, and, more likely, actually failed to refute Innosys's evidence.

[24] Our holding on this point does not foreclose the possibility of a more fulsome showing by Mercer after remand. Perhaps at a later stage she will carry the "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal quotation marks omitted). She has not done so on this record, however, and we reverse on that basis.

sumption of irreparable harm also precludes summary judgment on InnoSys's NDA claim.[25]

¶48 Moreover, InnoSys's claim would survive summary judgment even absent the presumption, as it has presented actual evidence of threatened harm. InnoSys's evidence is at least sufficient to establish genuine issues of material fact on the question of Mercer's continued access to the trade secret information, and thus a threat of future harm.

¶49 First, InnoSys introduced evidence concerning Mercer's use of a web-based Gmail account to access InnoSys's trade secrets. On this issue, InnoSys established that the InnoSys material had been transferred to Google's possession, that the actual content of Gmail messages is screened and employed for Google's business and advertising purposes, and that Google retains deleted emails from Gmail accounts.[26]

---

[25] *See Brake Parts, Inc. v. Lewis*, 443 F. App'x 27, 32 (6th Cir. 2011) (recognizing that the nature of irreparable harm is the same in a non-disclosure agreement case as it is in a trade secret case); *Bowe Bell & Howell Co. v. Harris*, 145 F. App'x 401, 404 (4th Cir. 2005) (affirming preliminary injunction on claim for misappropriation of trade secrets and breach of nondisclosure agreement based on a "likely misappropriat[ion]" of trade secrets and "likely violat[ion]" of nondisclosure agreements); *see also* UTAH CODE § 13-24-2(2)(b)(ii)(B) (recognizing, as a basis for establishing trade secret misappropriation, proof of use of trade secret information with knowledge that the information was "acquired under circumstances *giving rise to a duty to maintain its secrecy or limit its use*" (emphasis added)).

[26] InnoSys argued that Gmail is not bound by a confidentiality agreement. InnoSys's CTO stated, among other things, that "Gmail maintains and processes the content of e-mail messages for the purpose of delivering advertising," and that InnoSys "no longer has the ability to control and maintain [the information ] . . . Ms. Mercer transferred to her Gmail account." InnoSys additionally submitted evidence of Google's privacy policy, which stated that Gmail uses the "content of messages" in its advertising

(continued…)

¶50 InnoSys also submitted a declaration from an intellectual property attorney attesting to the harmful effects of the disclosure to Google. This witness stated that "[i]nventions cannot be patented in other countries after public disclosure, and cannot be patented in the US after the expiration of a one year grace period following a public disclosure." He further explained that as a result, "[t]he Google Terms of Service associated with Gmail accounts in force at the time of this statement do cast a colorable cloud on the value of confidential intellectual property transmitted using a Gmail account."

¶51 InnoSys even submitted evidence of Mercer's continued access to InnoSys's trade secrets and of the ongoing threat of disclosure. One piece of such evidence came from InnoSys's IT specialist. He testified that Gmail "would never let you delete a message," and that "[o]nce it went to their servers . . . you can't make it go away." That alone is enough to establish an ongoing threat of disclosure, or at least a genuine issue of such a threat.[27]

---

services. InnoSys's CTO also stated that "merely . . . deleting emails from one email account will not necessarily result in the data being destroyed." Finally, in a deposition, InnoSys's IT specialist referred to tech news reports that Gmail "would never let you delete a message," and that "[o]nce it went to their servers . . . you can't make it go away" because "Google always keeps a copy of it."

[27] The above evidence cannot be dismissed on the grounds identified by the dissent. First, the declaration from legal counsel was no mere "legal opinion[]," as in the cases cited in the dissent. *Infra* ¶ 94 n.3. The declaration in question proffered a legal and factual basis for concluding that InnoSys was subject to future risk as a result of Mercer's misappropriations. Mercer, moreover, raised no objection to the declaration (neither in the district court nor on appeal)—certainly not on the ground raised by the dissent. So InnoSys had no opportunity to respond, and we have no basis for questioning this evidence (as does the dissent). The same goes for the dissent's challenge to InnoSys's evidence of the potential for access to Mercer's Gmail. Absent any objection questioning the declarant's "personal knowledge" or basis for "giv[ing] expert tes-

(continued…)

¶52 That same point was hammered home by further evidence presented by InnoSys. As to the trade secrets that Mercer misappropriated by disclosing them to DWS in her unemployment hearing, for example, the record was sufficient to establish Mercer's ongoing authority to reopen the file in her case and thereby access the relevant trade secrets. Thus, when InnoSys sought an order protecting against any further disclosure of its trade secrets, the ALJ openly denied having the authority to enter such an order, and indicated that all he could offer was the department's *policy* of "resist[ing] all attempts *by outside agencies* to access these records." That is hardly reassuring. If anything, it establishes that Mercer is an ongoing threat—since a former claimant in a DWS proceeding is *entitled* to access to her own file in a prior DWS proceeding to which she was a party.[28]

¶53 A further piece of the evidentiary picture concerns the equivocations and inconsistencies in Mercer's own testimony. She ultimately admitted telling two different stories about when and why she had accessed InnoSys's protected business plan. *Supra* ¶¶ 10–11, 28, 31. These equivocations and inconsistencies undermine her credibility and introduce a core genuine issue as to her supposed intent to reform and never again harm InnoSys.

---

timony" on the matter, *infra* ¶ 94 n.3, we are no in position to reject the evidence on these grounds, as they have been neither preserved nor briefed.

[28] *Compare* UTAH CODE §§ 63G-2-201(3)(a), -302(1)(a) (classifying "records concerning an individual's eligibility for unemployment insurance benefits" as "private" records), *with id.* § 63G-2-202(1)(a) ("Upon request . . . a government entity *shall disclose* a private record to . . . *the subject of the record*." (emphasis added)). The dissent would reject this point on the ground that "[t]here appears to be no record evidence that suggests the emails were retained in DWS's files," and thus "no indication that Ms. Mercer would seek to access the DWS files in the future." *Infra* ¶ 94 n.3. This point, however, is a matter subject to inference from legal principles on which we can take judicial notice. And any doubt on the matter should go to InnoSys as the non-moving party.

¶54 Finally, the evidence advanced to this point by InnoSys does not attempt to quantify the economic impact on InnoSys or to measure the extent of any unjust enrichment flowing to Mercer. Those failures might be a barrier to InnoSys's ultimate recovery of monetary damages. But they have nothing to do with any failure to establish "irreparable harm." And where injunctive relief is an available remedy, the claim cannot properly be dismissed on the ground that InnoSys has failed to develop a basis for a monetary damages remedy.

¶55 The NDA itself specifically contemplated this circumstance. It expressly stated that in the event of a breach "it may be impossible to measure in money the damage to [InnoSys]." And it accordingly authorized InnoSys to seek "an injunction" to "minimize or prevent damage" to InnoSys.

¶56 InnoSys made an ample showing of irreparable harm. And we cannot properly fault it for not framing that harm in quantifiable terms. *Cf. Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (holding that plaintiff was entitled to injunctive relief to prevent disclosure of trade secrets under a non-disclosure agreement as to future harms, as well as monetary damages for actual harm that had already occurred and was quantifiable). We accordingly reverse summary judgment on the NDA claim and remand for further proceedings not inconsistent with this opinion.[29]

## C. Breach of Fiduciary Duty

¶57 The above grounds are also sufficient to sustain reversal of InnoSys's claim for breach of fiduciary duty. This claim, like the others, was dismissed on the basis of InnoSys's purported failure to present evidence of actual economic harm. And again, the ample grounds for a finding of irreparable injury suffice to reverse that decision. *See Norand Corp. v. Parkin*, 785 F. Supp. 1353, 1355

---

[29] The dissent asserts, without elaboration, that "InnoSys's claim for breach of fiduciary duty is preempted by the UTSA." *Infra* ¶ 97. That question was not raised below or briefed on appeal, however, so we do not reach it.

(N.D. Iowa 1990) (enjoining a former employee from working with a competitor because of the likely existence of a fiduciary duty not to disclose trade secrets and other confidential information). We reverse on that basis.

¶58  In so holding, we need not and do not address the caselaw endorsed by the dissent. *See infra* ¶¶ 96–97 (discussing *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 48, 274 P.3d 317, and *Frantz v. Johnson*, 999 P.2d 351, 357–58 (Nev. 2000)). These cases address an important question of preemption—of whether a common law fiduciary duty claim is preempted by the UTSA. But that issue was neither preserved below nor argued on appeal, and we accordingly decline to reach it.

## D. Rule 11 Sanctions and Fee Award

¶59  Finally, the merits analysis above is also sufficient to sustain the reversal of the district court's decisions entering rule 11 sanctions against InnoSys and awarding Mercer attorney fees. Now that InnoSys has prevailed on Mercer's motion for summary judgment on all counts, Mercer cannot be entitled to sanctions or fees.

¶60  Mercer's claim to a fee award arose under a provision of the NDA and under Utah Code section 78B-5-825. Yet both of those provisions limit their authorization of fee awards to *prevailing parties*. *See* UTAH CODE § 78B-5-825(1) (providing for "reasonable attorney fees to a *prevailing party*" where the action or defense was "without merit and not brought or asserted in good faith" (emphasis added)); (InnoSys NDA section providing that the recovery of "reasonable attorneys' fees" "may be granted" to "the *prevailing party*" in any "action at law or in equity brought to enforce . . . the terms of this Agreement" (emphasis added)). Now that Mercer's motion for summary judgment has been denied on all counts, she is in no sense a prevailing party. Her request for fees must accordingly also be denied.

¶61  The same goes for Mercer's request for sanctions under UTAH R. CIV. P. 11. In entering sanctions, the district court concluded that InnoSys had asserted its claims for an improper purpose—in violation of UTAH R. CIV. P. 11(b)(1). Any possible premise for that conclusion is eliminated by our decision reversing the

entry of summary judgment against InnoSys. For reasons discussed in detail above, InnoSys has, to this point in this litigation, identified good faith grounds in fact and law to assert its claims against Mercer. And that is sufficient to defeat Mercer's request for sanctions under rule 11(b)(1).

¶62  The filing of a complaint with a good faith basis in law and fact cannot sustain sanctions on the grounds of "being presented for an[] improper purpose" under rule 11(b)(1).[30] The rationale for this conclusion is straightforward: If a complaint has a good faith basis in law and fact, its assertion is at least presumptively for a proper purpose—to assert the plaintiff's right to recover on its claims. In other words, "[a] party should not be penalized for or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief

---

[30] *See Sussman v. Bank of Israel*, 56 F.3d 450, 458–59 (2d Cir. 1995); *Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Fed'n of Fed. Emps.*, 844 F.2d 216, 223–224 (5th Cir. 1988); *Townsend v. Holman Consulting Corp.*, 929 F.3d 1358, 1362 (9th Cir. 1990) ("With regard to complaints which initiate actions, we have held that such complaints are not filed for an improper purpose if they are non-frivolous."); *Burkhart ex rel. Meeks v. Kinsley Bank*, 852 F.2d 512, 515 (10th Cir. 1988) ("[I]f counsel filed [a] . . . complaint which *was* warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, then any suggestion of harassment would necessarily fail." (internal quotation marks omitted)). *See also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) ("[Under the court's inherent power to impose sanctions,] we have declined to uphold [sanctions] . . . absent both clear evidence that the challenged actions are entirely without color, *and* [are taken] for reasons of harassment or delay or for other improper purposes" (third alteration in original) (emphasis added) (internal quotation marks omitted)); William W. Schwarzer, *Sanctions Under the New Federal Rule 11*, 104 F.R.D. 181, 196 (1985) ("If a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate.").

may have been improper." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995).[31]

¶63 That is not to say that "the filing of a[ny] paper for an improper purpose is immunized from Rule 11 sanctions simply because it is well grounded in fact and law." *Nat'l Ass'n of Gov't Emps.*, 844 F.2d at 224. In cases involving "repetitious or excessive filings," the courts have recognized that even a meritorious claim may be advanced for an improper purpose like harassment. *Id.*[32] As to the "filing of an original complaint," however, there is no possibility of any repetition or excessiveness, and thus the courts have generally held that the filing of a "well grounded" complaint "cannot generally serve as a basis for imposing sanctions." *Id.*

¶64 We apply that general rule here. And we reverse on that basis. Several of the grounds for sanctions identified by the district court went to InnoSys's failure to present a copy of the NDA signed by Mercer. Those grounds went by the wayside when InnoSys discovered the original document. The other grounds, moreover — regarding InnoSys's alleged retaliatory motives for filing suit — are irrelevant as a matter of law. If InnoSys had a good faith basis in fact and law for its claims (as we conclude that it did), it matters not that it may have harbored an ulterior motive of retaliation.

————

[31] *Cf. Eldrige v. Johndrow*, 2015 UT 21, ¶ 68, 345 P.3d 553 ("[I]t will never be the defendant's motivation by itself that leads to liability.").

[32] *See also id.* (noting relevance of motive in abuse of process cases).

JUSTICE DURHAM, dissenting:

¶65 I respectfully dissent from the majority opinion. I would affirm summary judgment against InnoSys on all claims. InnoSys failed to create a dispute of material fact that would preclude summary judgment on both its damages claims and its claims for injunctive relief.

## I. SUMMARY JUDGMENT ON INNOSYS'S DAMAGES CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS AND FOR BREACH OF CONTRACT

¶66 It is well established in Utah that to overcome a motion for summary judgment on a claim for which damages is an element, the plaintiff must show evidence of damages. *Borghetti v. Sys. & Comput. Tech Inc.*, 2008 UT 77, ¶ 31, 199 P.3d 907 ("[I]n order to overcome summary judgment [plaintiff] must come forward with admissible 'evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages.'"). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Brown v. Div. of Water Rights of the Dep't of Nat. Res.*, 2010 UT 14, ¶ 14, 228 P.3d 747 (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992)).

¶67 Damages constitute a necessary element of a contract claim. *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388. If, by the summary judgment stage, a plaintiff has made no showing of damages on a contract claim, there is no reason to proceed to trial because the plaintiff has not presented evidence on which a jury could find that it is entitled to relief. *See Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 52, 201 P.3d 966.

¶68 Actual damages is also a necessary element of a damages claim under the Uniform Trade Secrets Act (UTSA). The UTSA provides for three specific forms of damages: compensation for actual loss, disgorgement of unjust enrichment, and reasonable royalties. UTAH CODE § 13-24-4(1). Where a statute provides for a particular amount or form of damages, "[a]ny expansion of the damages that may be recovered must be undertaken by the legis-

lature, not the courts." *Adkins v. Uncle Bart's, Inc.*, 2000 UT 14, ¶ 40, 1 P.3d 528; *see also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). Federal and state courts have unanimously interpreted the UTSA's list of forms of damages to be exclusive and have therefore required plaintiffs to show evidence of damages in one of these categories.[1]

---

[1] *See Litton Sys., Inc. v. Ssangyong Cement Indus. Co.*, 107 F.3d 30, 1997 WL 59360, at *7–8 (Fed. Cir. 1997) (holding that California's codification of the UTSA requires plaintiffs to show damages in one of the three listed categories); *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1054 (D. Ariz. 2010) (granting summary judgment to defendant former employee because "[p]laintiffs ha[d] not met their burden to overcome summary judgment by showing evidence they were proximately damaged by [defendant's] use of confidential information"); *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1142 & n.8 (M.D. Fla. 2007) (holding that "[i]f [plaintiff] cannot show at trial . . . that [it] suffered any damages in the actual loss of such materials, [plaintiff] cannot recover for the misappropriation"); *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1335–39 (S.D. Fla. 2006) (granting judgment as a matter of law in favor of a defendant because the plaintiff produced no evidence of "an actual loss, unjust enrichment, or a reasonable royalty related to the misappropriation of [the plaintiff's] trade secrets"), *aff'd*, 294 F. App'x 501 (11th Cir. 2008); *Storage Tech. Corp. v. Cisco Sys., Inc.*, No. CIV.00-2253 (JNE/JGL), 2003 WL 22231544, at *9–10 (D. Minn. Sept. 25, 2003) (holding that the defendant was "entitled to summary judgment because [the plaintiff] fail[ed] to submit a viable damages theory" for actual losses, unjust enrichment, or a reasonable royalty) *aff'd*, 395 F.3d 921 (8th Cir. 2005); *FAS Techs., Ltd. v. Dainippon Screen Mfg. Co.,* No. C 00-01879 CRB, 2001 WL 637451, at *3–4 (N.D. Cal. May 31, 2001) (holding that a plaintiff seeking to recover damages under the California codification of the UTSA must show evidence of harm); *News Am. Mktg. In-Store, Inc. v. Marquis*, 862 A.2d 837, 846 (Conn. App. Ct. 2004) ("Actual damage is a necessary el-

(continued…)

J. DURHAM, dissenting

¶69 InnoSys produced no evidence of any damages caused by Ms. Mercer's breach of the NDA or misappropriation of trade secrets. According to the evidence produced by InnoSys, Ms. Mercer kept work emails after she was terminated. She also failed to return a business plan that her supervisor instructed her to review shortly before she was fired. She then used some of the emails in an administrative unemployment benefits hearing to defend herself from InnoSys's assertion that she was fired for incompetence. After Ms. Mercer learned that InnoSys was displeased that she still possessed work emails and the business plan, she deleted them. InnoSys produced no evidence that Ms. Mercer ever used or disclosed the documents in any way that harmed InnoSys or unjustly enriched herself. Absent any evidence of actual loss, unjust enrichment, or a basis for an award of reasonable royalties, summary judgment as to InnoSys's damages claims was not error. *See Carbo Ceramics, Inc. v. Keefe*, 166 F. App'x 714, 725 (5th Cir. 2006) (affirming summary judgment because the plaintiff "failed to meet its burden of presenting sufficient evidence demonstrating a triable issue of material fact as to actual damages recoverable under its trade secret misappropriation claim"); *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1054 (D. Ariz. 2010) (granting summary judgment in a misappropriation and breach-of-contract case against a former employee because "[p]laintiffs ha[d] not met their burden to overcome summary judgment by showing evidence they were proximately damaged by [defendant's] use of confidential information"); *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 639–41 (N.D. Ill. 2007) (dismissing contract-based breach-of-confidentiality claims against a former employee because the former employer made no showing of damages).

¶70 At minimum, therefore, Ms. Mercer is entitled to partial summary judgment in her favor on InnoSys's claims for damages.

---

ement that must be proven by the plaintiff to prevail on its trade secrets claim."); *Unilogic, Inc. v. Burroughs Corp.*, 12 Cal. Rptr. 2d 741, 748–750 (Ct. App. 1992) (affirming judgment of nonsuit where plaintiff admitted it suffered no financial loss and did not show evidence of unjust enrichment or reasonable royalty).

## II. SUMMARY JUDGMENT ON INNOSYS'S INJUNCTIVE RELIEF CLAIMS FOR MISAPPROPRIATION OF TRADE SECRETS AND FOR BREACH OF CONTRACT

¶71 In addition to damages, InnoSys sought injunctive relief for its misappropriation of trade secrets and breach of contract claims. An injunction does not require proof of actual damages; a court may grant equitable injunctive relief upon a showing of threatened future harm. *Sys. Concepts, Inc. v. Dixon*, 669 P.2d 421, 428 (Utah 1983). The majority opinion bases its reversal of summary judgment upon its conclusion that even if there is no evidence of actual damages or unjust enrichment, there is a dispute of fact as to whether there is a threat of future harm that could justify injunctive relief. I disagree.

*A. The Presumption of Irreparable Harm*

¶72 One of the necessary elements of a claim for injunctive relief is proof of irreparable harm. *See* UTAH R. CIV. P. 65A(e) (a preliminary injunction requires a showing that "[t]he applicant will suffer irreparable harm unless the order or injunction issues"). "Irreparable injury justifying an injunction is that which cannot be adequately compensated in damages *or* for which damages cannot be compensable in money." *Hunsaker v. Kersh*, 1999 UT 106, ¶ 9, 991 P.2d 67 (internal quotation marks omitted). "It is thus well-established that an injury is irreparable only if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (internal quotation marks omitted).

¶73 Several jurisdictions have adopted a presumption that the disclosure of a trade secret constitutes an irreparable harm that justifies an injunction. The presumption of irreparable harm is based upon the fact that the disclosure of a trade secret has the potential to destroy the legal protections afforded to a trade secret if it becomes generally known. *See* 4 ROBERT M. MILGRIM & ERIC E. BENSEN, MILGRIM ON TRADE SECRETS § 15.02[1][c] (2013) (noting that "unprotected disclosure of a trade secret destroys the secret"). Because "of the difficulties involved in valuing the consequences of the destruction of a trade secret," *id.*, some courts have adopted a presumption that the harm associated with an unauthorized disclosure is irreparable, *see FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (holding that "the loss of

trade secrets cannot be measured in money damages"); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 867 (S.D. Ohio 2008) (holding that "[t]he loss of trade secrets is usually considered an irreparable harm [that] cannot be measured in money damages" (alterations in original) (internal quotation marks omitted)).  Thus, *once the risk of future disclosure has been established*, courts have presumed that the harm caused by the disclosure would be irreparable, justifying injunctive relief.

¶74  But we need not decide whether to espouse this judicially created presumption because it does not apply here. The key issue in this case is not whether an unprotected disclosure of InnoSys's trade secrets would produce an irreparable harm that could not be readily measured in money damages. Rather, the question presented is whether InnoSys produced evidence of a threatened future disclosure of InnoSys's files. *Infra* ¶¶ 79–86.

¶75  The majority, however, adopts a broader interpretation of the judicially created presumption that the harm occasioned by an unauthorized disclosure of a trade secret is irreparable—i.e., not easily remedied by money damages. The majority opinion holds that there is "a presumption of harm upon proof of misappropriation." *Supra* ¶ 34. Thus the majority appears to endorse the proposition that when a plaintiff seeks an injunction in a case involving trade secrets, there is a presumption of a threat of future harm rather than merely a presumption that any harm would be irreparable.

¶76  The majority's broad interpretation of the presumption of irreparable harm, however, is not supported by the reasoning that produced the presumption in the first place. The unauthorized disclosure of a trade secret has been presumed to lead to irreparable harm because of the difficulty of assigning a monetary value to the loss of the secret. The presumption of irreparable harm is not based upon an assumption that a plaintiff's allegations of threatened future use or disclosure are particularly trustworthy, shifting the burden of proof on this issue. *See Water & Energy Sys. Tech., Inc. v. Keil*, 1999 UT 16, ¶¶ 8, 14, 974 P.2d 821 (party seeking an injunction for misappropriation of trade secrets bears the burden of proof); *Amylin Pharm., Inc. v. Eli Lilly & Co.*, No. 11-CV-1061 JLS NLS, 2011 WL 5237558, at *2 (S.D. Cal. June 8, 2011) (rejecting as speculative a plaintiff's assertion that the defendant would misuse confidential information at a future date), *aff'd,* 456 F.

App'x 676 (9th Cir. 2011). Indeed, the leading commentator on trade secrets has noted that the presumption of irreparable harm is not a presumption that harm will occur: "[C]ourts have often ruled that a trade secret claimant is entitled to a rebuttable presumption of irreparable harm for the purposes of injunctive relief, *at least where there is a threat of disclosure of the trade secret.*" 4 ROBERT M. MILGRIM & ERIC E. BENSEN, MILGRIM ON TRADE SECRETS § 15.02[1][c] (2013) (emphasis added) (footnote omitted).

¶77 The Second Circuit has affirmed that absent evidence of a risk of prospective disclosure, a presumption of irreparable harm simply would not arise:

> We have previously observed that the loss of trade secrets cannot be measured in money damages where that secret, once lost, is lost forever. Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. That reading is not correct. A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets.

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted). The presumption of irreparable harm does not apply, however, where there is not a risk of "further dissemination or irreparable impairment of value." *Id.* Thus the Second Circuit directly rejected the proposition that the presumption applies in the absence of a showing of future harm through unauthorized disclosure. *See also Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92–93 (3d Cir. 1992) (rejecting a plaintiff's argument that "irreparable harm must be presumed where . . . the elements of a trade secret claim have been satisfied" and refusing to apply the presumption where the plaintiff did not show that the defendant intended to use or disclose the trade secret).

¶78 Therefore, the presumption of irreparable harm does not apply to the threshold question of whether InnoSys has produced

evidence of a threat of future injury through unauthorized disclosure of its trade secrets. The issue in this case is not whether a future harm is irreparable because it cannot be remedied through money damages, but rather whether there is evidence of a threat of future harm at all. I turn now to that question.

*B. No Evidence of Threatened Harm*

¶79 In addition to actual damages, InnoSys sought injunctive relief. But "[t]he fact the relief sought is injunctive does not excuse a showing of injury, whether actual or threatened." *Intel Corp. v. Hamidi*, 71 P.3d 296, 303 (Cal. 2003) (alteration in original) (internal quotation marks omitted). In Utah, a party seeking a permanent injunction must show that "irreparable harm *would* result" without the injunction. *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 13, 128 P.3d 1151 (emphasis added) (listing the requirements for a permanent injunction); 42 AM. JUR. 2D *Injunctions* § 33 (2010) ("An injunction will not be granted to restrain acts, however irregular or unauthorized, that do not injure the complainant.") The threatened injury must be "a real and immediate injury, not an abstract injury or one that is conjectural or hypothetical." *Ramos-Santos v. Hernandez-Nogueras*, 867 F. Supp. 2d 235, 260 (D.P.R. 2012). A court will not exercise its power to grant injunctive relief "to allay a mere apprehension of injury at an indefinite future time." 42 AM. JUR. 2D *Injunctions* § 34 (2010); *accord United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (injunction requires a determination "that there exists some cognizable danger of recurrent violation, something more than [a] mere possibility").

¶80 If the evidence presented by a plaintiff seeking injunctive relief "is insufficient to justify issuance of a permanent injunction, the trial court simply ha[s] no discretion to exercise," and summary judgment is proper. *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 97 Cal. Rptr. 3d 856, 876 (Ct. App. 2009) (internal quotation marks omitted); *Shaw v. Tampa Elec. Co.*, 949 So. 2d 1066, 1070 (Fla. Ct. App. 2007) (holding that a court may deny a request for injunctive relief in a summary judgment proceeding if it is clear the plaintiff cannot meet the requirements for an injunction).

¶81 InnoSys did not present evidence of a threatened disclosure of its trade secrets that would cause it harm. InnoSys argued below that Ms. Mercer's retention of emails and other electronic documents after she was terminated created a threat of future

harm that justified an injunction against her. Ms. Mercer presented evidence that she no longer had access to InnoSys's documents because she deleted them. InnoSys agrees that Ms. Mercer deleted the files from her Gmail account and the thumb drive—indeed, it brought a spoliation claim based upon the deletions. Furthermore, InnoSys's forensic analysis of Ms. Mercer's computers, thumb drive, and Gmail account confirmed that she no longer had the electronic documents. But InnoSys contends that Ms. Mercer's assertions that she did not forward the files to another electronic storage device or email account prior to deletion may be false, and that she may have had the continuing ability to disclose or use InnoSys's documents in the future. Thus, the propriety of summary judgment on the injunctive relief claim hinges upon whether a dispute of material fact existed as to Ms. Mercer's continued possession of InnoSys's documents.

¶82 The party opposing summary judgment "may not rest upon the mere allegations or denials of the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." UTAH R. CIV. P. 56(e). If the opposing party fails to produce specific evidence creating a dispute of material fact, summary judgment shall be entered. *Id.*; *Johnson*, 2005 UT 82, ¶ 21 (affirming summary judgment on injunction claim where the opposing party "failed to contest [the moving party's evidence] with specific sworn evidence as required under rule 56(e)").

¶83 Here, InnoSys did not produce any evidence that Ms. Mercer had retained electronic files containing InnoSys's trade secrets. Before this litigation began, Ms. Mercer sent a letter to InnoSys asserting she did not copy or transfer InnoSys emails prior to deleting them. In her depositions, she affirmed that she no longer had access to the emails or the business plan because she permanently deleted them. And forensic scrutiny of Ms. Mercer's email account and electronic storage devices yielded no evidence that relevant files had been copied prior to deletion. In short, InnoSys produced no evidence indicating that Ms. Mercer secretly retained copies of InnoSys's files. It merely speculates that Ms. Mercer may still have access to the files. *See Titaness Light Shop, LLC v. Sunlight Supply, Inc.,* 585 F. App'x 390, 391 (9th Cir. 2014) ("To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough.").

J. DURHAM, dissenting

¶84 Absent evidence supporting a conclusion that Ms. Mercer retained the ability to use or disseminate the InnoSys files, summary judgment was appropriate because InnoSys's allegations that Ms. Mercer posed a potential future risk to the company and its trade secrets are too "remote and speculative" to merit an injunction. *Almurbati v. Bush*, 366 F. Supp. 2d 72, 78 (D.D.C. 2005); *Johnson*, 2005 UT 82, ¶ 13 (requiring parties seeking injunctions to show that harm "would" result from the absence of an injunction); *see also Am. Airlines, Inc. v. Imhof*, 620 F. Supp. 2d 574, 580 (S.D.N.Y. 2009) (where a former employee offered to delete or return all copies of documents and computer files he had taken from his former employer, injunctive relief was not warranted because the former employer "failed to establish the requisite threat of irreparable injury in respect of the copied documents").

### C. Preservation

¶85 The majority asserts that because Ms. Mercer did not specifically argue below that InnoSys's injunctive relief claims failed because it did not produce evidence of a threatened future harm of unauthorized disclosure, this issue was not preserved and should not be considered by this court. *Supra* ¶¶ 40–41. But this argument ignores our well-established rule that the preservation rule does not apply to arguments for the affirmance of a judgment below:

> The appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, *was not raised in the lower court, and was not considered or passed on by the lower court*.

*Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 5 n.1, 284 P.3d 616 (emphasis added) (internal quotation marks omitted); *accord Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158; *Goodsel v. Dep't of Bus. Regulation*, 523 P.2d 1230, 1232 (Utah 1974).

¶86 At any rate, InnoSys raised the issue of whether evidence of a threatened harm precluded summary judgment as to the injunctive relief claims. The issue of whether there was a dispute of

fact regarding future harm, therefore, was preserved because it was presented to the district court for resolution. *Gressman v. State*, 2013 UT 63, ¶ 45, 323 P.3d 998 (an issue is preserved if one party presents it to the district court in a manner that gives the court the opportunity to rule on it).

## *D. Voluntary Reform*

¶87 Citing trademark caselaw, the majority also argues that Ms. Mercer's "voluntary reformation and cessation of unlawful activity" by deleting InnoSys's files does not necessarily defeat InnoSys's claim for injunctive relief. *Supra* ¶¶ 42–46. As the Supreme Court has noted, "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *W. T. Grant Co.*, 345 U.S. at 633. The principle that voluntary reformation does not necessarily defeat an injunctive relief claim makes sense in situations where a trademark infringer voluntarily stops the illegal activity after a lawsuit is filed. Where the only impediment to future harmful conduct is the defendant's self-imposed restraint, the likelihood of prospective infringement of an intellectual property right is a question of fact for the court. *See id.* (if the defendant discontinues the illegal conduct, the moving party must still show "that there exists some cognizable danger of recurrent violation").

¶88 This case, however, is fundamentally different from the voluntary reformation caselaw cited by the majority. Unlike the typical trademark infringer who ceases illegal activity but retains the capability to reinitiate the harmful conduct in the future, Ms. Mercer undisputedly deleted InnoSys's emails and files. Thus, the future use or dissemination of the files is not just a matter of self-restraint. InnoSys has not produced evidence that Ms. Mercer retains the capacity to use its documents in the future. Absent evidence that she retained the ability to use or distribute the files, summary judgment was appropriate.[2]

---

[2] In support of its argument that the district court improperly granted summary judgment, the majority also quotes *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir. 1986), which states: "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [the plaintiff] substantial protection of its trademark." *Supra* ¶ 44. Although the

(continued…)

¶89 The majority cites Supreme Court precedent for the proposition that "'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The majority concludes that under this precedent, "the burden shifts to Mercer to carry the 'formidable burden of showing that it is absolutely clear [that] the allegedly wrongful behavior could not reasonably be expected to recur" in order to avoid an injunction against her. *Supra* ¶ 43 (alteration in original); *see also supra* ¶ 43 n.24 ("[T]he burden of proving reform has shifted to Mercer."). The majority also suggests that Ms. Mercer must satisfy this "'formidable burden'" in order to prevail on remand. *Supra* ¶ 46 n.25.

¶90 *Already, LLC* and *Friends of the Earth*, however, do not shift the burden to a defendant to prove that an injunction should not issue. In both of these cases, the defendant claimed that a federal court had no Article III authority to adjudicate an injunctive relief claim because the defendant's actions had rendered the case or controversy moot. *Already, LLC*, 133 S. Ct. at 726–27; *Friends of the Earth*, 528 U.S. at 173–74. Thus, the Supreme Court's pronouncement that a defendant bears a "formidable burden" was made in the specific context of the defendant's argument that a federal court lacked the authority to even adjudicate the injunctive relief claim. Because Ms. Mercer never claimed that InnoSys's injunctive relief claims were moot or challenged the district court's authority to decide these claims, *Already, LLC* and *Friends of the Earth* do not apply here.

---

relative burden borne by the defendant is certainly relevant when a court weighs the equities of granting an injunction, a plaintiff may not be relieved of the burden of providing evidence of a threatened irreparable harm. "[I]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992) (internal quotation marks omitted).

¶91 Indeed, the Supreme Court has long recognized that although

> the court's power to grant injunctive relief survives discontinuance of the illegal conduct[,] . . . . the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.

*W. T. Grant Co.*, 345 U.S. at 633. Even though voluntary reformation does not divest the court of power to issue an injunction, it also does not relieve the moving party of the burden of meeting the requirements of proving an injunction is required. As noted above, InnoSys has failed to meet this burden by creating a dispute of material fact regarding a threat of future harm. But even if the majority disagrees with my conclusion regarding the propriety of summary judgment on the injunctive relief claims, on remand, InnoSys still bears the burden of showing that the elements of a permanent injunctive relief claim have been satisfied in this case. *Johnson*, 2005 UT 82, ¶ 13 (listing the requirements for a permanent injunction); *Water & Energy Sys.*, 1999 UT 16, ¶¶ 8, 14. (party seeking an injunction bears the burden of proof).

### E. Inconsistent Testimony

¶92 On appeal, InnoSys contends that summary judgment on the injunction claim was inappropriate because it alleges Ms. Mercer gave false sworn testimony during a hearing on her unemployment benefits claim. InnoSys notes that Ms. Mercer incorrectly stated in the unemployment benefits hearing that she obtained the business plan the day before she was terminated because her supervisor instructed her to review it. She later clarified in this litigation that she acquired the plan on the day of her termination, although before InnoSys fired her. Ms. Mercer also testified in the unemployment benefits hearing that InnoSys's IT specialist gave her permission to transfer her work emails to her personal Gmail account. She then clarified in this litigation that she informed the IT specialist of her intention to forward the emails and he never told her not to do so.

¶93 The inconsistencies in Ms. Mercer's testimony are susceptible to an innocent explanation. The minor discrepancies may be

explained by the fact that Ms. Mercer did not anticipate that InnoSys would question her about her retention of work emails or the business plan, which was unrelated to the reasons for her termination at issue in the unemployment benefits hearing. Once she was given notice of the claims InnoSys raised in this litigation, she could have simply produced more precise testimony. Moreover, her transfer of work emails to her Gmail account and her acquisition of an electronic copy of the business plan also do not necessarily bespeak a nefarious intent to acquire InnoSys's trade secrets for later distribution or use. Ms. Mercer informed InnoSys's IT specialist of her intent to forward her work emails to Gmail and InnoSys does not contend that it discouraged or forbade this action. And Ms. Mercer's supervisor instructed her to review the business plan the day before she copied it to a thumb drive. Thus, her actions could have been motivated by nothing more than her stated desire to work from home, something she often did. Furthermore, the fact that she openly revealed to InnoSys that she had the emails and business plan by filing them in the unemployment benefits proceeding, apparently unaware that she had violated any legal duties by retaining the files after her termination, indicates that she did not intend to secretly use or distribute InnoSys's documents.

¶94 However, these are not the only inferences that could be drawn from the evidence. A fact-finder could conclude that Ms. Mercer intentionally lied during the employment benefits hearing in an attempt to avoid suspicion of wrongdoing. And the acquisition of emails and the business plan in a manner that allowed Ms. Mercer to retain them after her termination could itself be seen as an indication of an intent to use or distribute these documents. *See E.I. DuPont de Nemours & Co. v. Kolon Indus.*, 894 F. Supp. 2d 691, 711 (E.D. Va. 2012) (in determining the scope of an injunction, courts may "assess[] the misappropriator's conduct in effecting the misappropriation"). Thus, if Ms. Mercer had access to InnoSys's trade secrets, summary judgment on the injunction claim likely would be inappropriate because Ms. Mercer's intent to use or distribute the information at some point in the future would be subject to conflicting inferences. But that is not the case here. InnoSys argued below that Ms. Mercer's acquisition of work emails and documents created a danger of future harm. InnoSys did not, however, present any evidence that Ms. Mercer retained copies of InnoSys documents after she deleted them from her

Gmail account and thumb drive. *Supra* ¶¶ 79–86. Absent any evidence that Ms. Mercer had the ability to use or distribute the documents, the question of her intent to do so is irrelevant.[3]

---

[3] The majority argues that there is a dispute of material fact precluding summary judgment for several other reasons. The majority opinion cites, for example, the declaration of an attorney who opined that Google's terms of service agreement may permit Google to claim ownership of intellectual property transmitted through its email service and that the use of Gmail may constitute a public disclosure for the purpose of obtaining patent protection. *Supra* ¶ 50. But these are legal opinions (and unsupported legal opinions to boot). A nonmoving party "cannot avoid summary judgment by reference to inadmissible legal opinions." *Hein-Muniz v. Aiken Reg'l Med. Ctrs.*, 905 F. Supp. 2d 729, 742 (D.S.C. 2012), *aff'd*, 532 F. App'x 342 (4th Cir. 2013); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").

The majority also argues that there is a dispute of material fact as to whether Ms. Mercer could gain access to the work emails in the future because she might be able to recover them from Google despite being deleted. *Supra* ¶ 51. InnoSys, however, produced only the equivocal testimony of its IT employee to support its claim that the emails still resided on Google's servers. The InnoSys employee testified:

> I don't know much about it, but there was much talk on tech news about the fact Gmail would never let you delete a message. . . . [E]ven if a user deletes - - this may have changed - - at least for a considerable period of time, if a user deletes an e-mail from Google, you can't make it go away.

This is not evidence because InnoSys's IT employee has no personal knowledge regarding the presence of deleted emails on Google's servers, nor was he qualified to give expert testimony regarding Google's servers. Moreover, the employee gave no testimony regarding a user's ability to retrieve deleted emails from Google.

(continued…)

J. DURHAM, dissenting

## III. SUMMARY JUDGMENT ON INNOSYS'S BREACH OF FIDUCIARY DUTY CLAIM

¶95 As with the contract and misappropriation claims, the district court dismissed InnoSys's claim for breach of fiduciary duty on the grounds that InnoSys failed to establish damages stemming from Ms. Mercer's alleged breach. Because the breach of fiduciary duty claim rests upon the same evidence and reasoning as the contract and misappropriation claims, I would affirm for the same reasons stated above. I would also affirm on the additional ground that the breach of fiduciary duty cause of action is precluded by the UTSA.

¶96 The UTSA explicitly states that "this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," UTAH CODE § 13-24-8(1), unless the remedy sought is contractual, a civil remedy that is "not based upon misappropriation of a trade secret," or criminal, *id.* § 13-24-8(2). Thus, civil remedies that are "based upon misappropriation of a trade secret" are precluded by the UTSA. In other words, "a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information." *CDC Restoration & Constr., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 48, 274 P.3d 317; *accord Frantz v. Johnson*, 999 P.2d 351, 357–58 (Nev. 2000) (examining an identical statutory provision and determining that a breach of fiduciary duty claim was preempted by Nevada's UTSA).

---

Finally, the majority suggests that Ms. Mercer could retrieve paper copies of the emails from the file of her DWS proceedings. *Supra* ¶ 52. But because this theory was not advanced below or in the appellate briefs, a key factual predicate to this argument is missing from the record. There appears to be no record evidence that suggests the emails were retained in DWS's files of the unemployment benefits proceedings. Furthermore, there is no indication that Ms. Mercer would seek to access the DWS files in the future. *See Campbell Soup Co.*, 977 F.2d at 92 ("[A]n injunction [will not] be issued to restrain one from doing what he is not attempting and does not intend to do." (internal quotation marks omitted)).

¶97 It is clear that in this case InnoSys's claim for breach of fiduciary duty is based upon the same factual allegations that would support its claim for misappropriation of trade secrets. InnoSys argues that Utah law imposes a fiduciary duty upon employees who receive confidential information during the course of their employment to (a) keep that information confidential, (b) not compete with their employer by using that information, and (c) return the information upon termination. InnoSys then alleges that it disclosed confidential information to Ms. Mercer under the protection of a signed NDA (thereby giving rise to the fiduciary duty) and that Ms. Mercer subsequently breached that duty by disclosing the confidential information during the DWS hearing. But as shown above, InnoSys must utilize these same facts to substantiate its claim for misappropriation of trade secrets. Therefore, InnoSys's claim for breach of fiduciary duty is preempted by the UTSA, and its dismissal was proper for this additional reason.